THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* NICHOLAS CHRISOPULOS, Defendant-Appellant.

Second District   No. 79-168

Opinion filed March 28, 1980.

Mary Robinson, of State Appellate Defender's Office, of Elgin, for appellant.

Theodore F. Floro, State's Attorney, of Woodstock (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant was found guilty of aggravated assault (Ill. Rev. Stat. 1977, ch. 38, par. 12—2(a)(1)), after a bench trial, and was sentenced to a one-year period of probation. Defendant was directed to pay the cost of the proceedings and a $160 fine. Defendant appeals on the basis that the evidence was insufficient to find him guilty beyond a reasonable doubt.

As the result of an incident at the McHenry McDonald's, defendant was charged with possession of firearms without a firearm owner's identification card, unlawful use of a weapon and two charges of aggravated assault. The defendant pleaded guilty with regard to the weapon use and possession charges, and the court dismissed one of the aggravated assault charges on the basis that the State had not proved the case beyond a reasonable doubt.

The record discloses that at approximately 9:30 or 10 p.m., on December 14, 1977, two cars pulled into the McHenry McDonald's parking lot. One car parked perpendicularly to the concrete bumper on

the east side of the building. The second car pulled in between 30 seconds to a minute later at about a 45 degree angle to the front of the first car, near the passenger's side and about five feet away. The driver of the second car got out, leaving his door open, paused briefly to say something and went to the rear of his car. He raised the trunk and took out a gun case, opened it, and took out a gun and loaded it with shells from his pocket. The gun was described as a shotgun. The man then walked to the driver's side rear wheel of his car and, using both hands, pointed the gun toward the middle or front of the first car. There were six occupants in the first car. Upon observing this scene in the parking lot, the McDonald's assistant manager had one of the other employees call the police.

Two of the first car's occupants and the arresting police officer identified defendant as the driver of the second car. The driver of the first car and the complainant, who was one of the occupants of the first car, testified they were approaching the entrance to the parking lot of McDonald's and a car was tailgating them. The driver of the first car tapped his brakes and put on his turn signal for McDonald's. The car following apparently continued on, and the first car turned into the lot and parked. Two of the occupants had just gotten out of the car when they immediately got back in after observing the defendant drive around the corner of the building and pull up diagonally to their car on the passenger side. It was testified that both the front and rear doors of their car were open. The driver of the first car testified defendant got out of his car and said, "You better quit fucking around," and he responded, "What did I do? I don't know what you're talking about." Defendant then said: "You know what you did. I know what you did. So you better quit fucking around." Defendant began talking loudly about his gun and how he would shoot their tires and then shoot them and then said, "You think I'm kidding? Well, I'll get my gun and load it." Defendant then proceeded to load the gun with shells from his pocket. When a girl ran out of McDonald's and told him the police had been called defendant began to leave, but the police arrived and prevented him from leaving the parking lot.

Complainant, Brian Pender, testified he was sitting in the front seat on the passenger side. When defendant got out of his car, complainant said he said something to the effect of they were lucky they had caught him in a good mood. Defendant then said he would get his gun out of the car and that the tires would go first and then he would shoot them. Defendant said: "You think I'm still bullshitting you, huh?" whereupon defendant went to his car trunk, out of complainant's view, and opened it. Complainant said he saw the gun case and saw the gun through the crack of the open trunk. Complainant's testimony as to whether he had seen the gun or not was equivocal at times since he said, both on direct and

cross-examination, that he "thought" he saw the gun through the crack in the trunk when it was opened. Defendant then said: "You still think I'm screwing around, huh?" Complainant heard him open the bolt of the gun and assumed he loaded it, but did not actually see him load it, nor did he see defendant come around the side of the car with the gun and point it at him. Defendant was then warned that the police had been called, he put the gun down, shut the trunk and started to drive away before being stopped by the police. Complainant said he believed defendant was going to get a gun because of the way he was talking, and commented that because defendant was a big guy, it was enough to scare somebody.

Defense counsel moved for a directed verdict, which was denied, and defendant was called to the stand. He testified he was on his way home from work when the car in front of him braked extremely hard and fast, and that the kids in the car were giving him the finger and screaming and hollering. The driver of the first car denied anyone gave defendant the finger. When the car turned into McDonald's, defendant turned around and went back to McDonald's because he was angry. He pulled in "broadside" to the kids' car, got out and hollered at them asking, "What the hell do you think you're doing? You trying to kill me?" He recalled the right rear window was down half way, but did not recall if the front or rear doors of the car were open at the time. He denied saying anything about a gun to them or threatening any harm either to them or their car. He said a friend had given him the gun and three shells and asked if he would go out and fire it for him. He did so earlier that day but the first shot he took had caused the barrel to split. After he had his words with the kids, he went to his trunk to check his rear speakers because when he pulled into the lot and stopped fast he heard a loud noise and one of the rear speakers went out. He had to reach into his pocket to get his rear trunk key out first. He said the gun was not in the case in the trunk because the case no longer closed due to the split barrel. He moved the gun and the speaker was, indeed, smashed. It was stipulated that the gun was loaded with two shells at the time the defendant was apprehended in the parking lot. He said that he had loaded the gun earlier that day at the farm where he had fired the shot. He denied taking the gun out of the car, but said that the stock of the gun may have protruded slightly from the trunk when he moved it around to check the speaker.

■ Defendant argues there was insufficient evidence to prove that he either pointed the gun at Pender, the complainant, or that he placed him in reasonable apprehension of receiving a battery as the result of the defendant's use of the weapon. With respect as to whether defendant pointed a gun, three witnesses testified that the defendant did, in fact, point a shotgun at the car in which Pender was seated, though Pender himself did not actually see defendant point it. Pender was seated on the

passenger side of the front seat and the door was open. It is well settled that it is the province of the judge in a bench trial to determine the credibility of the witnesses and the weight to be given their testimony. (*People v. Brown* (1973), 14 Ill. App. 3d 196.) The testimony of these three witnesses was unequivocal and the judge could reasonably have found that the defendant pointed the shotgun at the car in which the complainant was sitting.

The use of the shotgun, coupled with the commission of an assault, are the two elements necessary to be proven beyond a reasonable doubt in order to sustain the conviction for aggravated assault pursuant to section 12—2(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 12—2(a)(1)). Defendant points out that Pender testified he did not actually see defendant point the gun, nor did Pender state definitely that he had seen a gun. Both on direct and cross-examination, Pender qualified his answers to questions whether he had seen the gun with the phrase, "I think I seen the gun through the crack [in the open truck hood]." However, once during direct examination, Pender did give an unqualified "yes" in response to the question: "You could see it [the gun] through the crack of the trunk?" Defendant cites no cases which would support his argument.

The State counters the defendant's contention by asserting that there is no requirement that the victim of an aggravated assault must see the weapon before he may be said to be "in reasonable apprehension of receiving a battery." Although no cases directly on point are cited in the State's brief, nor were any discovered in the course of our research, the State cites *People v. Preis* (1963), 27 Ill. 2d 315, 317, wherein complainant testified:

> " 'There is nothing left to do except to shoot you'. * * * '[A]nd with that she stood up and placed her hand in the right hand pocket of her trenchcoat, and a bulge in the right hand pocket pointed toward me and there was a movement of her hand in the right hand pocket'."

The court held that even though the victim had not actually seen the gun, he would have been reasonably apprehensive that the defendant was about to shoot him and found the defendant guilty of assault with intent to murder.

In another case, *People v. Nogas* (1974), 18 Ill. App. 3d 279 (abstract), the complainant, who was defendant's mother, did not testify at all, but the police officer testified defendant had broken out a door window with his gun and complainant was standing behind a wall inside the apartment screaming as the defendant pointed the gun through the window. Although the opinion was not published, our examination of it disclosed nothing that would indicate the complainant actually saw the

gun since she was behind the wall, yet defendant's conviction of aggravated assault was upheld. Complainant was screaming; a fact which would reasonably indicate her "apprehension." In the case at bar, there was no testimony as to any physical manifestations of complainant's apprehension.

■ It is clear that a victim is not required to testify expressly that he was in apprehension of receiving a battery. It is sufficient if it can be reasonably inferred from the facts that the victim was placed in reasonable apprehension. (*People v. Brown*; *People v. Harkey* (1979), 69 Ill. App. 3d 94.) Whether complainant was in reasonable apprehension is a question of fact. (*People v. Holverson* (1975), 32 Ill. App. 3d 459.) In the case at bar, defendant's manner of pulling into the lot and parking at an angle to the first car could objectively be viewed as aggressive, rather hostile behavior. His subsequent profane and angry words with the occupants of the first car, his threats to use his gun to shoot the tires and then the people, and his movement to the trunk of his car, where he could indeed have a gun, and complainant's testimony that he heard a noise which sounded to him like a gun being loaded, clearly provide sufficient facts from which the trier of fact could have reasonably concluded that complainant was placed in a position of not only reasonable but, quite likely, great apprehension. A point raised by the State is well taken in that the fact that defendant moved out of complainant's line of vision when he opened the trunk most likely served to intensify, not negate, complainant's feelings of apprehension, since he did not know exactly from where defendant might strike. Additionally, in the case at bar, complainant himself testified he believed defendant was serious when he said he was going to get a gun because of "the way he was talking" and because "defendant was a big enough guy to scare somebody." Apparently, defendant appeared to be a man of his words.

We conclude the evidence was sufficient to prove the defendant guilty of aggravated assault beyond a reasonable doubt and affirm the judgment of the court below.

The judgment of the circuit court of McHenry County is affirmed.

Judgment affirmed.

LINDBERG and WOODWARD, JJ., concur.