537 So.2d 236 (1988)
STATE of Louisiana
v.
Raymond FLANK.
No. KA-773.
Court of Appeal of Louisiana, Fourth Circuit.
December 13, 1988.
*237 Harry F. Connick, Dist. Atty., Terry M. Boudreaux, Brian T. Treacy, Asst. Dist. Attys., New Orleans, for plaintiff.
M. Craig Colwart, Orleans Indigent Defender Program, New Orleans, for defendant.
Before GARRISON, BARRY and WILLIAMS, JJ.
BARRY, Judge.
The defendant was indicted for first degree murder. La.R.S. 14:30. After a mistrial the unanimous jury convicted the defendant and recommended life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The defendant alleges six assignments of error. We affirm the conviction and sentence.

*238 FACTS
On the morning of December 17, 1983 Mrs. Faye Carnesi was walking to her car which was parked in front of her house. A black male wearing a shower cap walked past her. Martin Carnesi went to see his wife off and the black man demanded money from him. Mr. Carnesi reached into his pocket to get his money and the man pulled a gun and killed him. The man then pointed the gun at Mrs. Carnesi and demanded her purse. She threw it to him and ran for help. She saw a light blue car speed off.
Mrs. Carnesi identified the defendant from a photo lineup and at trial. The defendant was arrested on the day of the murder in connection with another armed robbery and Johnnie Thomas testified that he saw the defendant driving the same light blue car which Mrs. Carnesi saw.

ASSIGNMENT # 1

Motion to Suppress the Identification
Before an identification will be suppressed the defendant must prove that it was suggestive and there was a substantial likelihood of misidentification as a result of the procedure. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Gibson, 511 So.2d 799 (La.App. 4th Cir.1987), writ denied, 514 So.2d 1174 (La. 1987).
A photographic lineup may be unduly suggestive "if the pictures display the defendant so singularly that the witness' attention is unduly focused on the defendant." Prudholm, supra. However, even if an identification is suggestive, a reversal still does not lie if the identification is reliable. State v. Williams, 458 So.2d 1315 (La.App. 1st Cir.1984), writ denied 463 So. 2d 1317 (La.1985), citing Manson v. Braithwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed. 2d 140 (1977).
Manson enumerated five factors to determine whether an identification is suggestive: (1) the witness' opportunity to view the defendant during the crime; (2) the degree of attention paid by the witness during the commission of the crime; (3) the accuracy of any prior description by the witness; (4) the level of the witness' certainty shown at the identification; (5) the length of time between the crime and identification. Manson, 97 S.Ct. at 2253.
Mrs. Carnesi's testimony at the motion to suppress the identification and at trial was relatively the same. She said as she was getting into her car a black male with a shower cap on walked by. She got a good look at him and thought it was very strange that he was wearing a shower cap. He looked straight into her eyes and slowed as he passed. At that point Mr. Carnesi was going to the car and the man stepped in front of Mr. Carnesi and demanded money. Mrs. Carnesi was wearing glasses and the sun was out.
Mrs. Carnesi testified as to the description she gave of the gunman right after the shooting. He was wearing light blue jeans, a beige jacket, and a shower cap, and she said his build was a little larger than her son-in-law's. No information on her son-in-law's build is in the record.
Officer Albert Speiss testified as to the description given to him by Mrs. Carnesi immediately after the shooting. He said Mrs. Carnesi was hysterical and intermittently blacked out. She said the perpetrator was a black male, between 20 and 30 years old, 5'10" to 6', 134-145 pounds with a thin mustache, a thin to medium build, and a brown complexion. He wore dark pants, a beige windbreaker and a shower cap. Officer Speiss broadcast the description then turned the investigation over to Detective Dillman of the Homicide Division.
Detective Dillman interviewed Mrs. Carnesi about forty-five minutes after the shooting. He said she was very emotional. She described the man as in his mid to late twenties, approximately 5' 10", 150 pounds, medium build, brown or light skin, a small mustache, soft-spoken, fairly nice looking, wearing dark pants, a light tan windbreaker and a shower cap.
Six days later Detective Dillman presented a photographic lineup to Mrs. Carnesi. Dillman testified that the lineup consisted of six people of the same general description, including the defendant. Dillman and *239 Mrs. Carnesi testified similarly as to the presentation of the lineup and the defendant's identification. The pictures were laid out in two horizontal rows of three pictures each, were numbered on the back, and not placed in any particular order. Mrs. Carnesi immediately pushed four of the pictures to the side, examined the other two and identified the defendant. Mrs. Carnesi stated repeatedly that she was positive the defendant killed her husband because she would never forget his face. Mrs. Carnesi also positively identified the defendant at trial. There is no showing that Officer Dillman or anyone else influenced Mrs. Carnesi.
Our review of the photos confirm that they depict similarly featured men. No picture can be singled out as drawing more attention than the others.
The defendant does not make a specific argument on how the lineup was suggestive. Our review of the record convinces us that the identification procedures were proper.

ASSIGNMENT # 2

Photographs of the Victim
The standard for admission of photographs is set out in State v. Comeaux, 514 So.2d 84 (La.1987):
Generally, photographs of the body of a victim depicting the fatal wounds are relevant to prove the corpus delicti, to corroborate other evidence of the manner in which death occurred and to establish the location, severity, and number of wounds, and the identity of the victim. The test of admissibility is whether the probative value of the photographs outweighs the prejudice which may result from their display to the jury. The circumstance that the photographs are gruesome does not of itself render them inadmissible. (citation omitted)
Comeaux, 514 So.2d at 96-97. The photographs must be so gruesome that they overwhelm reason and associate the defendant with the offense without sufficient evidence. State v. Watson, 449 So.2d 1321 (La.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985).
The two photographs in question (S3, S4) corroborate the testimony regarding the nature and severity of Mr. Carnesi's wound and Mrs. Carnesi's testimony regarding the murder. Their probative value outweighs any possible prejudicial effect.
This assignment has no merit.

ASSIGNMENT # 3

Motion for Mistrial
The defendant complains that his motion for a mistrial should have been granted because Johnnie Thomas, a state witness, allegedly testified about another crime in which the defendant had been involved.
The relevant testimony by Mr. Thomas is as follows:
Q: Let me direct your attention back to December 23rd, 1983. Do you recall who you were working for at that time?
A: Yes. I was working for Bordens.
Q: Do you recall your whereabouts approximately between 5:30, 6:00, 7:00 in the morning?
A: Yes, I was servicing a grocery store on Morrison Road.
Q: Is that in New Orleans East?
A: Yes, it is.
Q: Sir, I am going to show you two photographs which have been previously marked as State's exhibit6 and 7. Do you recall seeing an automobile that looked like that automobile at that time, December 23rd, 1983, the early morning hours?
A: Yes, I do.
Q: Did you see the person that was driving that car?
A: Yes, I did.
Q: Do you see that person in court today?
A: Yes, I do.
Q: Would you point him out please for the record?
*240 A: That gentleman sitting over there. (Indicating)
Q: Let the record reflect that the wintess [sic] has identified the Defendant before the Bar.
The automobile in the photographs was also identified by Mrs. Carnesi as looking like the car she saw speed off just after her husband was murdered.
Mr. Thomas' testimony links the defendant to the car which Mrs. Carnesi described. None of the testimony even suggests that the defendant was involved in another crime.
This assignment has no merit.

ASSIGNMENT # 4

Improper Closing Argument
The defendant complains that the trial court erred by overruling the defendant's objections to the State's closing argument during rebuttal and in failing to admonish the jury. The allegedly improper argument follows:
STATE:
She positively identified the man that killed her husband. She will never forget it. She won't get up here and lie about it. Your job as jurors is to recognize the fact that you are in a courtroom right now with a man who has committed murder. And if you don't recognize that fact he gets up and walks away
La.C.Cr.P.Art. 774 defines the proper scope of closing arguments:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the State or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The State's rebuttal shall be confined to answering the argument of the defendant.
However, even if a prosecutor goes beyond the permissible scope of closing argument, reviewing courts will reverse a conviction only if it is thoroughly convinced that the jury was influenced by those remarks and the remarks contributed to the verdict. State v. Sharp, 418 So.2d 1344 (La.1982); State v. Keller, 526 So.2d 378 (La.App. 4th Cir.1988), writ denied, 531 So.2d 472 (La.1988).
The State's remarks summarized the evidence against the defendant, asked the jury to conclude that the defendant committed the murder, and stated he would be released if the jurors found that he did not commit the murder.
We are convinced that the State's closing argument did not appeal to prejudice. The facts of this brutal, cold-blooded murder would raise the emotions of any normal, rational person.
This assignment has no merit.

ASSIGNMENT # 5

Jury Instruction on Reasonable Doubt
La.C.Cr.P. Art. 804, in pertinent part, sets out the jury charge on reasonable doubt:
A. In all cases the court shall charge the jury that:
(1) A person accused of crime is presumed by law to be innocent until each element of the crime, necessary to constitute his guilt, is proven beyond a reasonable doubt;
(2) It is the duty of the jury, in considering the evidence and in applying to that evidence the law as given by the court, to give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence in the case; and
(3) It is the duty of the jury if not convinced of the guilt of a defendant beyond a reasonable doubt, to find him not guilty.
The court may, but is not required to, define `the presumption of innocence' or `reasonable doubt' or give any other or further charge upon the same than that contained in this article.
Article 804 allows, but does not require, the court to define "reasonable doubt". The defendant contends that the definition which the court gave (1) overstated the *241 degree of uncertainty required for reasonable doubt and (2) suggested that reasonable doubt about an essential fact was not sufficient to return a not guilty verdict.
The objected to instruction is as follows:
The burden therefore is on the State to establish to your satisfaction beyond a reasonable doubt the guilt of the accused as to the crime charged in the indictment or any lesser one which may be included in it. Now, it is the duty of the jury to consider the evidence and apply it to the laws given by this Court to give the Defendant the benefit of every reasonable doubt arising out of the evidence or the lack of evidence in this case. Now, if you entertain any reasonable doubt as to any fact or element necessary to constitute the Defendant's guilt, it is your sworn duty to give him the benefit of that doubt and return a verdict of acquittal. Even when the evidence demonstrates a probablity [sic]. Yet if [sic] does not establish beyond a reasonable doubt you must acquit the accused. This doubt must be a reasonable one. One that is found upon a real tangible substantial basis and not upon mere caprice, fancy, or conjecture. In other words, it must be such a doubt that it would give rise to a grave uncertainty raised in your minds by reason of the satisfactory character of the evidence. One that would make you feel that you had not abiding conviction to a morale [sic] certainty of the Defendant's guilt. After giving a fair and impartial consideration to all of the facts of the case if you find the evidence unsatisfactory upon any single point indispensably necessary to constitute the Defendant's guilt [sic]. This would give rise to such a reasonable doubt as would justify in [sic] returning your verdict of not guilty. Now, the prosecution must establish guilt by legal and sufficient evidence beyond a reasonable doubt. The rule does not go further and require a preponderance of testimony. In other words, it is incumbent [sic] upon the State to prove the offense charged or legally include it [sic] in the indictment to your satisfaction and beyond a reasonable doubt. Simple language a reasonable doubt is not a mere possible doubt. It should be an actual or a substantial doubt. In other words, it is such a doubt as a reasonable man or woman would seriously entertain. It is a serious doubt for which you as a juror could give a good reason. (emphasis added)
The defendant's reliance on State v. McDaniel, 410 So.2d 754 (La.1982), where the jury charge was flawed, is misplaced. This charge is practically identical to others approved by this Court in State v. Washington, 522 So.2d 628 (La.App. 4th Cir. 1988), writ denied, Bentley v. State, 523 So.2d 1321 (La.1988), cert. denied, ___ U.S. ___, 109 S.Ct. 94, 102 L.Ed.2d 70 (1988), and by the Supreme Court in State v. Taylor, 410 So.2d 224 (La.1982).
This assignment has no merit.

ASSIGNMENT # 6

Jury Instructions on First and Second Degree Murder
The defendant contends the trial judge gave an example using the facts in this case, a violation of La.C.Cr.P. Art. 806.
La.C.Cr.P. Art. 806 provides:
The court shall not charge the jury concerning the facts of the case and shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted.
The example given by the trial court was:
COURT:
The first example is: Is when an individual would walk into a bank with the intent to commit an armed robbery.... and he takes the money and then shoots the teller and kills the teller and intended to either kill the teller or intended to cause serious bodily harm to the teller and the teller died. That is First Degree Murder.
The trial court's example did not use the facts in this case. The example involves *242 the murder of a teller during a bank robbery, whereas this case concerns a murder outside the victim's home.
This assignment has no merit.
The defendant's conviction and sentence are affirmed.
AFFIRMED.