WARD, Judge.
Arthur Lewis and a co-defendant were charged with first degree murder committed during the perpetration of an armed robbery. Lewis pled not guilty and not guilty by reason of insanity. After a sanity hearing on March 6, 1990 he was found competent to stand trial. The trial court ordered a severance of the charges against Lewis and Fleury. After a trial, a petit jury found Lewis guilty as charged. Fleu-ry pled guilty to a lesser charge. The jury unanimously recommended a life sentence and the trial court sentenced Lewis to life imprisonment at hard labor without benefit of parole.
Lewis has appealed and asks this Court to reverse on two grounds. First, he contends that the trial court erred by not suppressing a photographic identification made by a witness, contending that the identification was suggestive. It is also his contention that the evidence presented by the State does not support the verdict returned by the petit jury and he argues that the verdict, if allowed to stand, violates due process of law.
We affirm. The identification was not suggestive; the evidence supports the verdict.
We will first address Lewis’ complaint that the State failed to prove his guilt beyond a reasonable doubt. He argues that the jury’s verdict was clearly contrary to the evidence presented because the testimony of the State’s witness was not credible while that of his alibi witness was.
There is no merit to Lewis’ argument. The following evidence and the facts support the verdict. On November 7, 1989, shortly before 9:00 p.m., four tourists in the City, William Allison, Jane Johnston, and Jefferson and Bessie Ratcliffe were returning to their French Quarter hotel from a restaurant on Decatur Street. While walking in the 600 block of Ursuline Street, Ms. Johnston and Mrs. Ratcliffe were in front and the two men were eight to twelve feet behind. A blue and white Chevrolet Nova stopped in the middle of the street and two young black men got out and approached Mr. Allison and Mr. Ratcliffe.
One of the young men had a gun, and his companion demanded that Mr. Allison and Mr. Ratcliffe hand over their wallets. Mr. Ratcliffe ran over to his wife to protect her, and he heard Mr. Allison tell the robbers that he would not give them his wallet. The unarmed robber then repeatedly told his companion to shoot and the other robber shot Mr. Allison three times. The unarmed robber went over to the others and demanded their money which they *215 gave him. Mr. Allison arose and said that he was not going to let the robbers get away with what they had done and the armed man shot Mr. Allison two more times. As the two robbers got back into their car and drove away, Mr. Ratcliffe pulled a fifty dollar bill out of his pocket and wrote on it what he believed to be the license plate number of the car.
Within three minutes the police arrived, but Mr. Allison was dead. He had been shot five times with a .38 caliber gun. An unidentified bystander gave one of the officers a slip of paper on which he had written the license plate number of the car. The number was 223N960. A check of the records showed that the car belonged to David Scott.
Scott told the police that he had given his car to Fleury in exchange for crack cocaine the day before. Scott showed the police where Fleury’s girlfriend lived at 2024 North Prieur Street. She was Acquanetta Lewis, the younger sister of Arthur Lewis, the defendant.
Mr. Ratcliffe described the man who shot Mr. Allison as a light-skinned black, who was clean-shaven, between the ages of eighteen and twenty.
On November 8th, Detective Herman Cade found identification cards and photographs belonging to Mr. Ratcliffe in the 2100 block of North Prieur, across the street from Lewis’ home. Lewis was arrested later that day. Seven days later Mr. Ratcliffe selected Lewis’ picture from a photographic lineup as the man who robbed him and shot William Allison.
At trial, “Nugie!’ and “Terry,” both testified that on the evening of November 7 they rode around in Scott’s car with Fleury doing the driving. “Nugie” testified that he saw Fleury give Lewis a .38 caliber gun. which was chrome with a wooden handle. “Terry” also saw Lewis with the gun.
Fleury testified that in exchange for testifying he had pled guilty to manslaughter and three counts of armed robbery and would not receive a sentence in excess of forty years. Fleury stated that on the evening of the murder he went to Lewis’ home while “Terry” with “Nugie,” took the car for a short while. “Terry” brought the car back; and Fleury and several others, including Lewis, began driving around. Fleury testified that after he dropped off the others, he, Lewis, and another man robbed an elderly man of $9.00 near the K & B Drug Store at Frenchmen and Derbig-ny Streets. After dividing the proceeds of the robbery, he and Lewis dropped off the other robber at a gas station at Claiborne and Elysian Fields Avenues. He and Lewis then decided to rob someone in the French Quarter and after driving around for a short while, they drove up Ursuline and saw the four tourists. Fleury got out of the car and walked up to the man and woman in front while Lewis approached the other couple. The man hit him in the mouth and he, Fleury, shouted “shoot the man”. Lewis did not shoot the man until the man moved toward Lewis. Fleury then took the other wallets and a purse and he and Lewis headed for the car. The man who had been shot started to come after them and Lewis shot the man again. He and Lewis drove to Lewis’ house on North Prieur where they divided up the money. Fleury said that he threw away the wallets and the purse in a garbage can by a school near Lewis’ house. Fleury admitted to being a crack cocaine dealer; he denied giving a gun to Lewis on the night of the murder.
Lewis testified that he was at the home of Ulo Jimerson, his girlfriend, on the evening of November 7th. He stated that he arrived there at approximately 8:00 p.m. and did not leave until sometime between 10:00 p.m. and 11:00 p.m. Ulo Jimerson, her mother, and her younger sister all testified that Lewis was at their home but gave inconsistent testimony as to the time.
The standard for reviewing a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306 (1982). The reviewing court is not to con *216 sider just the evidence most favorable to the prosecution, but is to consider the record as a whole because that is what a rational trier of fact would do. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. The jury’s determination of credibility is not to be disturbed on appeal absent an abuse of its discretion. State v. Cashen, 544 So.2d 1268 (La.App. 4th Cir.1989).
This evidence and these facts show that Lewis committed first degree murder; the evidence more than supports the verdict; there is no lack of due process as defined by Jackson v. Virginia. Viewing all of the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded that the defendant was the person who committed the first degree murder of William Allison. Although Fleury’s testimony was contradictory to that of the alibi witnesses, the jury must have found his testimony credible as opposed to the testimony of defendant’s alibi witnesses. This credibility determination should not be disturbed. This assignment of error is without merit.
Turning to Lewis’ other argument, he complains that the trial court erred in denying his motion to suppress the photographic identification by Jefferson Ratcliffe because Ratcliffe’s initial description of the assailant was so sketchy. A defendant seeking to suppress an identification must show both that the identification itself was suggestive and that there was a likelihood of misidentification as a result of the identification procedure. State v. Prudholm, 446 So.2d 729 (La.1984). A photographic lineup may be deemed unduly suggestive if the pictures display the defendant so singularly that the attention of the witness is focused on the defendant. State v. Flank, 537 So.2d 236 (La.App. 4th Cir.1988).
Manson v. Braithwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), set forth five factors to determine whether an identification is reliable, to wit: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness’ degree of attention; (3) the accuracy of the witness’ prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation.
The trial court did not err in denying the motion to suppress the identification. Although Mr. Ratcliffe did not give a detailed verbal description of the person who shot Mr. Allison, there is nothing in the record which indicates that the identification of Arthur Lewis in the photographic lineup was unreliable or suggestive. The crime scene was well-lit and Mr. Ratcliffe was standing next to the victim when Lewis shot him. Mr. Ratcliffe testified that he paid a great deal of attention to the gunman and he was positive in his identification during the photographic lineup, which occurred a week after the murder. This assignment of error is without merit.
We affirm Lewis’ conviction and sentence.
AFFIRMED.