**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Andrew L. HUNN, Defendant–Appellant.**

**Nos. 93–2603, 93–2604.**

United States Court of Appeals, Seventh Circuit.

Argued March 1, 1994.

Decided May 19, 1994.

Daniel P. Bach, Asst. U.S. Atty., Timothy O'Shea (argued), Madison, WI, for U.S.

Jeffrey J. Collins, Madison, WI (argued), for Andrew L. Hunn.

Before BAUER, FLAUM, and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

In this case the defendant, Andrew L. Hunn, pleaded guilty to five counts of bank robbery in violation of 18 U.S.C. § 2113(a). In four of these counts the district court found that Hunn had made express death-threats, thus increasing his offense level by two points. *See* U.S.S.G. § 2B3.1(b)(2)(F). Hunn appeals his sentence. We affirm.

## I. Background

Between August 14th and December 28th, 1992 Hunn committed five bank robberies in the state of Wisconsin. As the following discussion demonstrates, in each of these robberies Hunn, by uttering various threats, successfully intimidated the bank tellers into giving him money from their cash drawers: (1) August 14th—Hunn entered a Racine bank and handed its teller a note which read, "Give me all your money right away," and simultaneously placed his right hand, still concealed in his coat pocket, on top of the counter; (2) August 27th—Hunn entered a Waupun bank and handed its teller a note which read "This is a robbery, I have a gun, give me your money, don't try anything foolish," while keeping his right hand inside his jacket pocket; (3) October 5th—Hunn entered a West Bend credit union, handed the teller a note which read, "This is a hold-up. I have a gun," while keeping his right hand in a coat pocket, pointed at the teller; (4) November 19th—Hunn entered a Rothschild bank, handed the teller a note that read, "Just give me all your money, I have a gun," and told the employee "I'm serious, put all your money in the envelope," all the while, his hands were hidden below the counter; (5) December 28th—Hunn returned to this same Rothschild bank, handed a different teller a note stating, "Give me all the money now. I have a gun. No tricks, I'm watching." When this teller replied that Hunn must be joking, he insisted, "No, I mean it," and "Hurry up." The teller stated that Hunn was pointing something from inside his right coat pocket toward her during the robbery as if he had a hidden gun.

Hunn pleaded guilty to all five counts of bank robbery. *See* 18 U.S.C. § 2113(a). In

its presentence investigation report ("PSI") the probation officer recommended a two-level increase in Hunn's offense level, reasoning that, in any or each of the last four robberies, Hunn made "express threats of death" as defined in U.S.S.G. § 2B3.1(b)(2)(F). Hunn objected to this recommendation. The district court overruled his objection and adopted the Guideline calculations contained in the PSI. The district court stated that at least during Hunn's fifth robbery, his oral demand accompanied by his body language (simulating a concealed handgun pointed at the teller) constituted a death-threat. The district court thus applied the two point enhancement eventually sentencing Hunn to five concurrent terms of sixty-three months imprisonment, followed by a three-year term of supervised release.

## II. Analysis

■ This circuit has had the opportunity to decide whether a bank robber should receive the two-level, death-threat enhancement under § 2B3.1(b)(2)(F).[1] In *United States v. Robinson*, a bank robber threatened a teller by stating "I have a gun and am not afraid to use it," and later using words to that effect in three other robberies. *See* 20

F.3d 270, 276 (7th Cir.1994). Without a detailed exposition, the *Robinson* court concluded that the robber's statement was enough for the § 2B3.1 enhancement. *Id.* at 277. The Eighth, Ninth, Tenth and Eleventh Circuits have also addressed what constitutes an "express threat of death" under the Guidelines. In *United States v. Smith*, 973 F.2d 1374 (8th Cir.1992), a defendant who had been found guilty of two counts of bank robbery, handed a teller a note stating, "Please give me all your hundreds, fifties, and twenties." *Smith*, 973 F.2d at 1375. The teller questioned, "Is this a joke?" *Id.* In response the defendant placed his right hand under his coat lapel and replied, "You don't want to find out." *Id.* The *Smith* court held that this statement, combined with the defendant's gestures threatening to use a gun, sufficiently communicated an "express threat of death" under U.S.S.G. § 2B3.1(b)(2)(F). *Id.* at 1378.[2]

In contrast to *Smith*, the Eleventh Circuit has placed a significantly different twist on § 2B3.1(b)(2)(F). *See United States v. Canzater*, 994 F.2d 773, 775 (11th Cir.1993). In *Canzater*, a defendant gave a note to a teller during a robbery which stated, "In the bag a gun 100s and 50s" and then put his hand

1. The Sentencing Guidelines advises the district court to make a two-level increase in a defendant's offense level "if an express threat of death was made" during a robbery. U.S.S.G. § 2B3.1(b)(2)(F). Application Note 6 to § 2B3.1(b)(2)(F) further explains this Guideline with the following commentary:

    An "express threat of death" as used in subsection (b)(2)(F), may be in the form of an oral or written statement, *act, gesture, or combination* thereof. For example, an oral or written demand using words such as "Give me money or I will kill you," "Give me the money or I will pull the pin on the grenade I have in my pocket," "Give me the money or I will shoot you," "Give me your money or else (*where the defendant draws his hand across his throat in a slashing motion*)," or "Give me the money or you are dead" would constitute an express threat of death. The court should consider that the intent of the underlying provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, significantly greater fear than that necessary to constitute an element of the offense of robbery.

U.S.S.G. § 2B3.1 comment., n. 6 (Nov. 1, 1992) (emphasis supplied). This commentary to Guideline § 2B3.1(b)(2)(F) is authoritative. *See Stinson v. United States,* —— U.S. ——, ——, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993).

2. *See United States v. Bell*, 12 F.3d 139 (8th Cir.1993) (following *Smith*). In like manner, the Ninth Circuit apparently would follow a *Smith* type approach. The court held that a statement to a teller not to pull an alarm "or my friend will start shooting," *United States v. Strandberg*, 952 F.2d 1149, 1151–52 (9th Cir.1992), and in a note presented to a teller which stated "Give Me All Your Money or I'll Shoot," *United States v. Eaton*, 934 F.2d 1077, 1079 (9th Cir.1991), are "express threats of death" under U.S.S.G. § 2B3.1(b)(2)(F). Relying on *Eaton*, the court held that the oral statement, "This is a robbery. Give me the money or I will shoot," was also an express death-threat. *United States v. Hoslett*, 998 F.2d 648, 659–60 (9th Cir.1993).

    As the Seventh, Eighth, and Ninth, the Tenth Circuit would also follow a *Smith* like analysis. The court stated that "the person behind me will shoot someone" constitutes an express death threat. *United States v. Lambert*, 995 F.2d 1006, 1008 (10th Cir.1993).

under his pants' waistband.[3] *Id.* During a second robbery, this defendant also gave a teller a bag while stating that he had a gun. *Id.* The court determined that the defendant did not make an express death-threat during either robbery, concluding that a bank robber threatening a teller with the words "I have a gun," while simultaneously putting his hand into his pants as if to grab a firearm, is not enough for a § 2B3.1(b)(2)(F) enhancement.[4] *Id.* The *Canzater* court reasoned that a threat to use a gun contains, at most, an implied death-threat. *Id.*

■ In choosing between the Eighth and Eleventh Circuit's approaches, we find the latter's reading of § 2B3.1(b)(2)(F) to be unnecessarily cramped. While the Guidelines require an "express threat of death," nothing indicates that speech is the only form of communication implicated. Are we to suppose that a bank robber who used only sign-language or miming to express his death-threat would be immune from a § 2B3.1 enhancement. Fortunately, we need not so speculate. The Guideline's commentary specifically indicates that "[a]n 'express threat of death' as used in subsection (b)(2)(F), may be in the form of an ... *act, gesture, or combination thereof.*" Application Note 6, commentary, U.S.S.G. § 2B3.1(b)(2)(F) (emphasis supplied). The comment then suggests that "[f]or example ... 'Give me your money or else (where the defendant *draws his hand across his throat* in a slashing motion)' ... would constitute an express threat of death." *Id.* (emphasis supplied). We believe that pointing one's hand, hidden in a coat so as to imitate the presence of a handgun aimed at another, is well within the plain text of

§ 2B3.1(b)(2)(F) and its accompanying commentary.[5] Conduct such as Hunn's constitutes an aggravated assault, a crime requiring the communication of a threat that creates a reasonable apprehension of death or serious bodily harm. *See People v. Chrisopulos*, 82 Ill.App.3d 581, 37 Ill.Dec. 910, 912, 402 N.E.2d 912, 914 (1980) (citing *People v. Preis*, 27 Ill.2d 315, 317, 189 N.E.2d 254, 255 (1963)) (opining that a defendant who "stood up and placed her hand in the right hand pocket of her trench coat [with] a bulge in the right hand pocket pointed toward [the victim]," could be found guilty of assault with intent to murder even though the victim had not actually seen any gun.); *see also Robinson*, 20 F.3d at 276. Even the Eleventh Circuit acknowledges that the death-threat enhancement may be applied "to defendants who have engaged in conduct that would instill in the victim a reasonable fear for his or her life," *United States v. Tuck*, 964 F.2d 1079, 1081 (11th Cir.1992). We adopt the approach taken in *Smith*, 973 F.2d at 1378, as recently followed by this circuit in *Robinson*, 20 F.3d at 276, and hold that a bank robber's pointing his hand through his coat pocket, while claiming to have a gun, can be a sentence-enhancing, death-threat expression under the plain text of Guideline § 2B3.1(b)(2)(F).

■ The dissent intimates that a bank teller may have an idiosyncratic view of bank robberies if she understands the gestures of a bank robber—thrusting an object reasonably believed to be a gun directly at her while stating "Give me all the money now. I have a gun. No tricks, I'm watching"—as an

---

3. The opinion does not specify the manner in which the defendant put his hand into his pants, but we infer that it was in a manner consistent with retrieving some kind of firearm.

4. In a subsequent Eleventh Circuit case, *United States v. Moore*, 6 F.3d 715, 721 (11th Cir.1993), the defendant handed the teller a note which stated, "I HAVE A GUN AND NOTHING TO LOSE. 100s AND 50 NO DYE MONEY." The court, relying on *Canzater*, held that the defendant's note was not an "express threat of death." *Id.* at 722. The court further stated that "Moore's statement that he had nothing to lose could be interpreted to mean that he was desperate and willing to turn the gun on himself, not

the teller," and thus was not "distinctly clear" like the examples set forth in the Guidelines commentary. *Id.*

5. We note that in this case, whether the defendant actually had a gun, although apparently significant to the dissent, is immaterial. The culpable act is his threat to kill somebody while committing a bank robbery. We do not here necessarily hold that having a gun automatically triggers § 2B3.1(b)(2)(F). As unlikely as it may be, had the defendant robbed the bank, without referencing or displaying in any way a gun, his secretly possessing a handgun would not implicate the § 2B3.1(b)(2)(F) enhancement.

express death-threat. In support, the dissent argues that:

> [v]ariations on 'I have a gun' are designed to create fear, all right, but not necessarily fear *of death*. Robbers with real guns may create fear by shooting into the air or by shooting to wound; they may use guns as bludgeons (*McLaughlin v. United States*, 476 U.S. 16, 18 [106 S.Ct. 1677, 1678, 90 L.Ed.2d 15] (1986)). Thieves want cooperation and money, not dead tellers.

*See* dissent *post* at 999. Other than *McLaughlin*,[6] the dissent, when it opines about what "is ordinary for a bank robbery," *see* dissent *post* at 1000, does not reference any specific basis for its assertion. With all due respect, the dissent's contention provides little more insight into this particular form of criminal conduct and its intended responses than the comical images of Woody Allen's well-known movie *Take the Money and Run,* Palomar Pictures (1968), in which the bank teller misreads the robber's note as stating that he had a "gub," rather than a "gun," and then the teller proceeds to argue with the robber (played by Allen) as to what the note reflects. Theorizing about the reasonableness of the teller's interpretation of Hunn's gestures, in the abstract manner of the dissent, discounts real-world uncertainties. The record indicates that the teller read Hunn's combined actions, gestures, and words as expressing a death-threat. Though by no means statistical, a search of relatively recent bank robberies tragically confirms that the community of tellers are often at fatal risk. *See e.g., Grillo v. National Bank of Washington,* 540 A.2d 743 (D.C.App.1988) (teller killed); *Brown v. State,* 262 Ga. 728, 425 S.E.2d 856 (1993) (tellers killed); *Houchin v. Indiana,* 581 N.E.2d 1228 (Ind.1991) (teller killed); *Allen v. Indiana,* 562 N.E.2d 39 (Ind.1990) (teller killed); *Louisiana v. Flank,* 537 So.2d 236 (La.Ct.App.1988) (teller killed); *Missouri v. Royal,* 610 S.W.2d 946 (Mo.1981) (teller killed); *Oregon v. Nefstad,* 309 Or. 523, 789 P.2d 1326 (1990) (teller killed). The dissent argues that "[o]nly what the bandit says or conveys in signs, not what the victim reads" is relevant in applying

Guideline § 2B3.1(b)(2)(F). *See* dissent *post* at 999. If the dissent is suggesting that a court, while deciding on this Guideline enhancement, should apply an objective test, what a "reasonable" victim would read from the robber's conduct, we agree. Nevertheless, we believe that since death can easily occur at the hands of a bank robber armed with a gun, a reasonable victim could understand Hunn's message loud and clear as a death-threat—without stopping to reflect on the likelihood of whether Hunn actually possessed a weapon.

The § 2B3.1 Guideline enhancement requires the robber to "instill in a reasonable person, who is a victim of the offence, significantly greater fear than that necessary to constitute an element of the offense of robbery." *See* Application Note 6, commentary, U.S.S.G. § 2B3.1. We disagree, however, with the dissent's conclusion that Hunn could not have crossed this line. *See* dissent *post* at 1000. The elements of bank robbery require the taking by force, violence, or intimidation, anything of value from a bank. *See* 18 U.S.C. § 2113. Had Hunn robbed the bank without communicating (through his acts, gestures, and words) his conditional death-threats, he still could have been convicted of violating § 2113. The fact that a bank robber's chance of success might be increased by his pointing a gun at the teller does not read such conduct out of this Guideline enhancement. Thus, we conclude that Hunn's conduct may be of the type that is significantly greater than *necessary* to constitute an element of the offense of bank robbery.

▆ Having determined that Hunn's non-verbal act may be an expressed death-threat under § 2B3.1(b)(2)(F), we next must evaluate the district court's factual findings. This court must give "due deference" to the district court's application of the Guidelines to the facts. 18 U.S.C. § 3742(e). In Hunn's case the district court found that Hunn made an "express threat of death" under Guideline § 2B3.1(b)(2)(F) during four of the five rob-

---

6. 476 U.S. at 17, 106 S.Ct. at 1678 (holding that an "unloaded gun was a 'dangerous weapon'" within the meaning of the law while noting that

"the display of a gun instills fear in the average citizen; as a consequence, it creates an immediate danger that a violent response will ensue").

beries. Similar to *Smith,* Hunn's December 28th death-threat[7] constituted a union of words and gestures. The combination of Hunn's note, which stated "Give me all the money now. I have a gun. No tricks, I'm watching;" and his gesture that he was pointing a gun through his right pocket at the teller, comprised an express threat that if she disobeyed she would be shot. *Cf. Smith,* 973 F.2d at 1378. This is enough. The teller who was robbed on December 28th reasonably believed that Hunn threatened her life during the robbery. Under our reading of the Guidelines we conclude that the district court's findings regarding Hunn's death-threats are not in any way clearly erroneous.

### III. Conclusion

From the record we conclude that the district court properly enhanced Hunn's sentence under U.S.S.G. § 2B3.1(b)(2)(F) for his death-threats made during the bank robbery. We affirm.

AFFIRMED.

EASTERBROOK, Circuit Judge, dissenting.

Hunn (falsely) told five banks' tellers that he had a gun. Was any of his notes and gestures "an express threat of death"? U.S.S.G. § 2B3.1(b)(2)(F). My colleagues answer yes, but it is not clear to me that Hunn made a "threat of death" at all, let alone an "express" threat of death.

It is tempting to ask: Why would a robber claim to have a gun, unless he wanted the victim to fear for his life? Claiming to have a gun implies a threat to use it; and threatening to use a gun portends death, the argument goes. Variations on "I have a gun" are designed to create fear, all right, but not necessarily fear of *death.* Robbers with real guns may create fear by shooting into the air or by shooting to wound; they may use guns as bludgeons (*McLaughlin v. United States,* 476 U.S. 16, 18, 106 S.Ct. 1677, 1678, 90

L.Ed.2d 15 (1986)). Thieves want cooperation and money, not dead tellers.

The Sentencing Commission set out to distinguish degrees of threats. Saying that you have a gun does not invariably induce a fear of death. To separate ordinary references to guns, and the apprehension they produce, from the terror that a threat *of death* yields, the Sentencing Commission provided that only an "express threat of death" justifies the two-level increase. An implication from words and gestures is not enough. Only what the bandit says or conveys in signs, not what the victim reads into shadings of "I have a gun," is an "express" threat. Anything else dissolves the difference between posturing and genuine threats of death.

The majority believes that this is a "cramped" reading of the Guidelines. So it would be, if the function of § 2B3.1(b)(2)(F) were to distinguish bona fide threats from idle chatter. Hunn's notes, words, and gestures would have created fear in reasonable persons. But putting the victim in fear is an element of the crime of robbery, see *United States v. Ray,* 21 F.3d 1134 (D.C.Cir.1994), and using ordinary degrees of fear for enhancement is double counting. Instead the Sentencing Commission's objective was to separate the sort of fear that accompanies most bank robberies from the panic that accompanies an express threat of death: "The ... intent of the underlying provision is to provide for an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, *significantly* greater fear than that necessary to constitute an element of the offense of robbery." U.S.S.G. § 2B3.1 application note 6 (emphasis added). A literal reading of the Guideline then is not "cramped" but is the only way to ensure that the text serves its function.

Threats lie along a continuum of seriousness and gravity. Yet the Sentencing Commission did not compose a multi-factor ap-

---

7. An "express threat of death" adds only two levels to the base offense level. If Hunn made an "express threat of death" during any one robbery, each of the other four robberies would count as one additional Unit for purposes of

calculating the combined offense level—regardless of whether Hunn made a death-threat during one or all of the other robberies. *See* U.S.S.G. § 3D1.2 & 3D1.4.

proach or ask the courts to balance objectives. It created a dichotomy between "express" and "implied" threats of death. The application note offers five examples: "Give me the money or I will kill you"; "Give me the money or you are dead"; "Give me the money or I will shoot you"; and two threats not involving guns. One is a threat to set off a hand grenade (fatal to all nearby) and the other is a mimed threat to slit the victim's throat. Hunn's threats do not come close. The one the majority emphasizes is a note stating: "Give me all the money now. I have a gun. No tricks, I'm watching." When the teller inquired whether this was a joke, Hunn replied "I mean it" and put his finger in his pocket to simulate a gun. This feigning is ordinary for a bank robbery. It may have placed the teller in fear of harm, but harm is not death, and an inference from the announcement of a weapon is not an "express" threat. The application note shows that the Sentencing Commission believes that a conditional threat can be "express"; if, as the majority holds, an implied conditional threat also qualifies, then "express" has been read out of the Guideline.

The eleventh circuit tries to enforce the express-implied distinction, elusive though it be. *United States v. Canzater*, 994 F.2d 773 (11th Cir.1993); *United States v. Moore*, 6 F.3d 715 (11th Cir.1993). The eighth circuit, recognizing that threats do not fall naturally into these categories, has thrown up its hands and authorized a two-level increase whenever statements or gestures imply a serious threat. *United States v. Smith*, 973 F.2d 1374 (8th Cir.1992); *United States v. Bell*, 12 F.3d 139 (8th Cir.1993). I recognize that an earlier opinion of this circuit, *United States v. Robinson*, 20 F.3d 270, 276–77 (7th Cir.1994), uses the eighth circuit's elastic approach, but that panel did not need to choose sides: the issue had not been preserved for appellate decision, and one of Robinson's notes made an express threat by any standard, so there could not have been plain error. Today the panel comes down squarely with the eighth circuit. I would follow the eleventh—and the text of the guidelines.