116 F.3d 1483
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James G. EVANS, Defendant-Appellant.
 No. 96-4013.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 30, 1997.
Decided May 28, 1997.
Rehearing Denied July 1, 1997.
 
 Appeal from the United States District Court for the Central District of Illinois, 2:96-Cr-20042-001; Michael M. Mihm, Chief Judge.
 Before COFFEY, FLAUM, and WOOD, Circuit Judges.
 
 ORDER
 
 1
 Appellant James G. Evans appeals the sentence imposed by the district court following his guilty plea to one count of bank robbery. 18 U.S.C. § 2113(a). The sole issue on appeal is whether the district judge properly increased Evans' offense level by two points under U.S.S.G. § 2B3.l(b)(2)(F) for making an express threat of death.
 
 I. Background
 
 2
 On June 11, 1996, Evans robbed a bank in Broadlands, Illinois. He eventually pleaded guilty to bank robbery. (His conviction is not an issue in this appeal.) The presentence report recommended that Evans receive a two-point enhancement for making an express death threat, U.S.S.G. § 2B3.l(b)(2)(F). Evans objected to this finding and the issue was presented to the district court at the sentencing hearing.
 
 
 3
 The parties did not dispute that Evans approached teller Connie Davis, asked her about opening an account, and eventually handed her a note indicating that he was robbing the bank and that she should put money in the bag he was holding. The material dispute in this case concerns whether Evans made a death threat either in the note, which was never recovered, or in an oral statement to Davis.
 
 
 4
 FBI agent Kenneth Temples testified at Evans' sentencing hearing that he interviewed Davis on the day of the robbery and that she told him that in addition to the other statements the note also contained the statement: "If you give me any dye money, I will kill you." Davis also testified at the hearing. She stated that the note did not contain the above death threat, but rather that Evans had conveyed such a threat orally. Evans testified that he did not convey a death threat either orally or in writing. (He had previously testified at his change of plea hearing that he did not recall the exact contents of the note but that it contained words along the line of: "This is a holdup.")
 
 
 5
 Following the presentation of testimony and argument by the parties, the district judge concluded that Evans qualified for the increase in offense level for making an express death threat. The judge stated:
 
 
 6
 Well, my finding on this is that this information [i.e. the death threat] was communicated to her. From my point of view, in terms of the significance of it, it doesn't really matter whether it was contained in the note or simply said. It's hard to tell which it was. But I tend to think that the testimony [Davis] gave here today [that Evans made the threat orally] is the most credible.
 
 
 7
 (Transcript of sentencing hearing of Nov. 14, 1996, at 48-49.) The district court then imposed a 56 month term of imprisonment (plus supervised release, a special assessment and an order of restitution). Following the entry of judgment, Evans filed a timely notice of appeal. He claims the court erred in increasing his offense level for making an express threat of death.
 
 II. Analysis
 
 8
 When sentencing a defendant for robbery, the court is directed to increase the defendant's offense level by two points "if an express threat of death was made...." U.S.S.G. § 2B3.1(b)(2)(F). Evans argues that the district judge erred in increasing his offense level under this provision. He asserts that the judge erred in his determination and findings of the underlying facts on which he based this enhancement and in determining that the facts as he found them qualified as a death threat within the meaning of § 2B3.1(b)(2)(F).
 
 
 9
 The evidentiary burden on the government at sentencing is one of preponderance of the evidence. United States v. Garcia, 66 F.3d 851, 856 (7th Cir.1995). The court of appeals reviews the district court's fact findings for clear error. Id. Under that standard, this court will overturn the district court's findings "only if, after reviewing the entire evidence, we are left 'with the definite and firm conviction that a mistake has been committed.' " United States v. Herrera, 878 F.2d 997, 1000 (7th Cir.1989) (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985)).
 
 
 10
 Here, the court's finding that Evans made a death threat was based upon Davis' testimony at the sentencing hearing that Evans told her "[i]f you give me any dye money, I will kill you." (Transcript of sentencing hearing of Nov. 14, 1996, at 39-40.) Evans argues that Davis' testimony lacked reliability because the FBI agent who interviewed her after the robbery testified that Davis told him that the death threat was contained in the note that he handed her and not communicated orally. Evans also argues that the judge's findings were insufficient because he did not adequately resolve the issue as to whether the death threat was contained in the note or communicated orally.
 
 
 11
 We hold that the district judge's findings of fact were not clearly erroneous and that he sufficiently articulated his conclusions. Even though the testimony indicates that Davis' story changed as to the manner in which the death threat was made, given that several months had passed between the time she spoke to the FBI agent and testified at the sentencing hearing, and because the FBI interview occurred within hours of the robbery, at which point she was likely distressed, the discrepancy in her stories does not make her testimony unreliable to the degree that the district court was required to reject it in full. Faced with Davis' two stories (both of which unequivocally stated that Evans made a death threat) and Evans' testimony that he made no such threat, the district court acted within its discretion in resolving the issue and concluding that Evans made a death threat. This determination was not clearly erroneous. See 18 U.S.C. § 3742 ("The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous."); United States v. Duarte, 1 F.3d 644, 650 (7th Cir.1993) ("[The] sentencing judge's determinations of credibility are entitled to great deference on review."); United States v. Bush, 79 F.3d 64, 66 (7th Cir.1996) (quoting Anderson, 470 U.S. at 573 ("Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous)). In addition, even though the judge did not firmly determine whether the death threat was written or oral (indicating only that it probably was the latter), his findings were sufficient notwithstanding this lack of specificity. Resolution of the dispute as to whether the threat was written or oral was not necessary for the district court to determine that it was appropriate to increase Evans' offense level. See U.S.S.G. § 2B3.1, Application Note 6 ("An 'express threat of death' as used in subsection (b)(2)(F), may be in the form of an oral or written statement, act, gesture, or combination thereof.").
 
 
 12
 Evans argues that United States v. Beler, 20 F.3d 1428 (7th Cir.1994), a case in which this court vacated the defendant's sentence on the ground that the district court's findings as to the quantity of drugs involved in the crime were insufficient, requires this court to vacate his sentence. Beler, however, is distinguishable. The dispute in that case involved quantities of drugs attributable to the defendant beyond the amount for which he was convicted for possessing and distributing. In determining that the government's evidence at sentencing was not sufficiently reliable even under the relaxed standards of proof that apply at sentencing, this court noted that the sentencing court failed to make any inquiry into the discrepancy between two affidavits presented by one of the government's witnesses as to the quantity of drugs attributable to the defendant.
 
 
 13
 Unlike the discrepancy in Davis' testimony in this case, the discrepancy there involved a matter (the quantity of drugs) that was material to sentencing and the court's resolution of such necessarily affected the sentence. Here, the material issue was whether Evans made an express threat of death. The district judge resolved this issue by clearly concluding that he had made such a threat. (Transcript of sentencing hearing of Nov. 14, 1996, at 48-49.) Whether Evans' threat was oral or written would have no effect on the sentence. That Davis may have changed her story was relevant to her credibility and reliability. However, the district judge noted the different versions of her story and nonetheless concluded that Evans had made a death threat in one form or another (the manner of such being irrelevant). Moreover, the witness who presented the affidavit in support of the quantity of cocaine on which Beler's sentence was based had testified at trial that he could not approximate how much cocaine he had purchased from Beler over the years. This witness did not present oral testimony at sentencing and was thus not subject to cross-examination on this point. In vacating the sentence, this court noted its discomfort with the lack of inquiry in the district court on this point. In contrast, Davis testified and was cross-examined at the sentencing hearing on the very point in dispute. Moreover, the FBI agent testified as to the allegedly different version of events that Davis related to him. Thus, in the instant case, the district court was presented with a complete rendition of the disputed evidence, which was subject to adversarial testing, and made explicit findings as to the material facts. In Beler, on the other hand, the court was privy only to a summary presentation of the evidence and made only cursory findings on disputed matters. Therefore, we reject Evans' argument that Beler mandates reversal.
 
 
 14
 Evans claims that even if the district court correctly concluded that he made the threat that Davis claims he did, that this threat did not meet the standard for an increase in offense level under U.S.S.G. § 2B3.1(b)(2)(F). Here, Davis claims that Evans told her: "If you give me dye money, I will kill you." (Transcript of Nov. 14, 1996 sentencing hearing, at 39-40.) Evans asserts that because this threat was designed to prevent action and not induce it, that it falls outside the conduct described in the Guidelines. He also claims that Davis was not unusually frightened by his statement as evidenced by the fact that while the incident was taking place, she let customers into the bank via a remote control switch, and gave Davis "marked" money (notwithstanding his threat that he would kill her if she gave him "dye" money).
 
 
 15
 This court must give due deference to the district court's application of the Guidelines to the facts, and thus we review such mixed questions only for clear error. 18 U.S.C. § 3742(e); United States v. Hunn, 24 F.3d 994, 998 (7th Cir.1994). Applying that standard, we affirm the district court's conclusion that Evans' threat qualified for an increase in offense level. The distinction between a threat to a victim to refrain from an action rather than to perform an action is irrelevant for purposes of § 2B3.1(2)(F). Evans correctly points out that the commentary gives examples phrased in positive terms, such as " '[g]ive me the money or I will kill you' [and] '[g]ive me the money or you are dead'...." U.S.S.G. § 2B3.1, Application Note 6. But these are listed as examples, not as enumerations of the only threats that count under the provision. The commentary provides these as illustrations of the type of comments that would instill in a reasonable person fear significantly greater than that necessary to constitute an element of the offense of robbery. The difference between a defendant's stating that he will kill the victim if she does not give him the money or that he will do so if she does give him "dye" money is indistinguishable in terms of the level of fear that each statement could be expected to cause the reasonable person. The increase in offense level is appropriate whenever the defendant's words or gestures would instill in a reasonable person greater fear than necessary to constitute an element of the offense of robbery. A conditional threat to kill the victim whether phased in positive or negative terms would instill in a reasonable person greater fear than would the elements necessary for bank robbery. See Hunn, 24 F.3d at 998 ("The elements of bank robbery require the taking by force, violence or intimidation, anything of value.... Had [the defendant] robbed the bank without ... his conditional death threats, he still could have been convicted of [bank robbery].")
 
 
 16
 Evans' argument that Davis did not react with great fear also misses the mark. In addition the FBI agent's testimony that Davis seemed quite shaken when he interviewed her hours after the robbery (thus weakening the factual basis of Evans' argument), how the victim actually reacted is irrelevant for purposes of § 2B3.1(b)(2)(F). The Guidelines call for an enhancement whenever the defendant makes an express threat of death (irrespective of how the victim reacts). Id. Moreover, the Commentary emphasizes that the standard is an objective one, focusing upon whether the defendant's comments would instill fear in a "reasonable person." U.S.S.G. § 2B3.1, Application Note 6. As such, whether a defendant qualifies for enhanced punishment does not turn on the fortuity of his choosing a cool customer as a victim.
 
 
 17
 A brief comment is in order with respect to the Eleventh Circuit's opinion in United States v. Moore, 6 F.3d 715 (11th Cir.1993). There the court held that a noted that stated "I have a gun and nothing to lose.... NO DYE MONEY " did not qualify as an express threat of death under U.S.S.G. § 2B3. (b)(2)(F). Id. at 721. In reaching this conclusion the court stated that the note said nothing about killing the victim and therefore required an inference that the note meant that the robber meant to kill the victim. Id. at 721-22. The court also noted that the victim responded with composure and not fright. Id. at 721.
 
 
 18
 The threat in the instant case is distinguishable from the one in Moore. Here, no inference was required; the defendant told the victim that he would kill her if she gave him dye money. To the degree that Moore turned upon the fact that the victim remained composed, this approach is in conflict with that used in this circuit. See United States v. Robinson, 20 F.3d 270, 277 (7th Cir.1994) ("To the extent that the Eleventh Circuit [in Moore ] has insisted on more explicit language before finding an 'express threat of death,' we disagree with its holdings."). Our cases interpreting § 2B3.1(b)(2)(F) have focused upon the nature of the threat, not the actual reaction of the victim. See, e.g., United States v. Jones, 83 F.3d 927, 929 (7th Cir.1996) ("[The defendant's] statements were sufficient to put a reasonable person in the tellers' position in fear of death, and therefore sufficient to support the ... 2-level increase under § 2B3.1[ (b)(2)(F) ] of the guidelines."); Hunn, 24 F.3d at 999 ("The combination of [the defendant's] note ... and his gesture[ ] ... comprised an express threat that if [the victim] disobeyed she would be shot.... This is enough [to qualify the defendant for an increase in offense level].").
 
 
 19
 The sentence imposed by the district court is AFFIRMED.