UNITED STATES of America, Appellee,

v.

**Vincent Leo WILSON, Appellant.**

**No. 90–5176MN.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1990.

Decided April 15, 1991.

Rehearing and Rehearing En Banc Denied May 30, 1991.

Scott F. Tilsen, Minneapolis, Minn., for appellant.

Nathan P. Petterson, Minneapolis, Minn., for appellee.

Before ARNOLD and MAGILL, Circuit Judges, and BATTEY,\* District Judge.

MAGILL, Circuit Judge.

Vincent Wilson appeals his conviction for possession with intent to distribute 225 grams of methamphetamine. Wilson argues that he was denied due process because the district court[1] admitted drug trafficker profile evidence as substantive evidence of his guilt, and when the district court allowed the government to use his pretrial services statements to impeach him on cross-examination. We affirm.

---

\* The Honorable Richard H. Battey, United States District Judge for the District of South Dakota, sitting by designation.

## I.

Vincent Wilson was arrested when he went to pick up a package at the Northwest Airlines VIP counter. The package was addressed to Wilson and was sent by Gary Chermak, who lived in the Phoenix, Arizona area, a source city for narcotics. Wilson informed the arresting officers that he was picking up the package for his boss, "Dennis Z." Wilson also told the officers that the package contained machine parts and that he was a truckdriver for Machines Unlimited. The police were unable to find a company called Machines Unlimited. On opening the package, the officers discovered eight plastic baggies containing methamphetamine and a slip of paper with "Vince, 2Z's" written on it. The police then searched Wilson and discovered an address book that contained Gary Chermak's name, along with a Phoenix phone number.

Wilson was charged with possession with intent to distribute approximately 225 grams of methamphetamine. In accordance with normal post-arrest procedure, Wilson was interviewed by a pretrial services officer to determine whether he should be released or detained pending trial. Before the interview, Wilson signed an advice of rights form that stated, in part:

> Information which I provide may not be used against me on the issue of guilt in any judicial proceeding except with respect to prosecution for perjury or false statements allegedly made in the course of obtaining my release or a prosecution for failure to appear for the criminal judicial proceeding with respect to which pretrial release is granted.

During this interview, Wilson stated that he received $45,000 in workers' compensation benefits in 1985.

At trial, the government presented evidence in its case-in-chief that showed that the drugs were in a package addressed to Wilson; that the name and phone number

---

1. The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota.

of the sender of the drugs were in Wilson's address book; and that inside one of the drug packets there was a slip of paper with the name "Vince" on it. During the direct examination of one of the arresting officers, Bruce Giller, the government asked about some of the things narcotics officers look for in an airport. The court sustained Wilson's relevancy objection to the use of the drug courier profile but permitted the government to introduce evidence about the number of flights made by Wilson because it was relevant to Wilson's defense that he was ignorant of the content of the package. The court also ruled that the number of flights was relevant to Wilson's statement to the arresting officers that he was a truckdriver, since truckdrivers do not normally fly as frequently as Wilson did. The government then called a Northwest Airlines representative who testified that, according to their frequent flyer records, Wilson had made forty-six trips to Phoenix in the past twenty months, some lasting less than twenty-four hours.

The other arresting officer, Steven Moss, testified about Wilson's statements at the time of the arrest. He said that Wilson told them that he was picking up the package for his boss, but that he could not remember his boss' last name. Moss also testified that Wilson claimed that he was a truckdriver for Machines Unlimited and that neither Moss nor Giller was able to locate a company by that name.

Wilson called two witnesses in his defense. First, he recalled one of the arresting officers and brought out that Wilson had said that the package was for a Dennis "Z," who was later identified as Dennis Zimmerman, a supervisor at a machine shop. Wilson then testified on his own behalf, stating that he did not sell or use drugs and that a mutual friend, Gary Chermak, had asked him to pick up the package for Dennis Zimmerman, who was a supervisor at a machine shop. Wilson testified that he did not tell the arresting officers that Zimmerman was his boss, but rather that he was a supervisor at a machine shop. Wilson also denied telling the officers that he was a truckdriver. Wilson explained that the frequent trips between St. Paul and Phoenix were made for a variety of personal and professional reasons. Wilson also testified that he received $68,000 from workers' compensation in 1987. On cross-examination, the government used Wilson's prior inconsistent statement about his workers' compensation benefits to impeach his testimony. The district court overruled Wilson's objection to the use of the pretrial services interview statements.

The jury convicted Wilson on January 30, 1990. Wilson filed a motion for a new trial, claiming that the government's use of the drug trafficker profile evidence violated his due process rights. The court denied this motion on February 5, 1990. The court then sentenced Wilson to a term of seventy months in prison followed by four years of supervised release.

## II.

### A. Drug Courier Profile Evidence

Wilson argues that the government used the drug trafficker profile as substantive evidence of his guilt and thus violated his due process right to a fair trial. The government contends that it merely used part of the profile to rebut Wilson's defense of ignorance. Furthermore, the government also argues that even if it improperly used profile evidence, the error was harmless, since there was substantial additional evidence supporting the conviction.

 This court has recently held that the admission of drug courier profile evidence is " 'inherently prejudicial' and can easily influence a jury into thinking that the defendant is guilty" and, therefore, should not be admitted as substantive evidence of guilt. *See United States v. Carter*, 901 F.2d 683, 684 (8th Cir.1990). In *Carter*, the court noted that, in that case, the admission of the profile evidence was unnecessary since the government did not need to establish the validity of the airport search in front of the jury. *Id.* at 684–85. In this case, the government offered the profile evidence not to establish the validity of the search, but to rebut Wilson's ignorance defense and to discredit the state-

ments Wilson made when he was arrested about being a truckdriver. Notwithstanding this proper use, the government also improperly referred to the drug courier profile in its closing argument.[2] Since Wilson failed to object to this statement in the closing argument, we review the statement under a plain error standard. Under this standard, we must affirm unless if the prosecutor's improper statement "prejudices the substantial rights of the defendant and would result in a miscarriage of justice if left uncorrected." *United States v. Carey*, 898 F.2d 642, 644 (8th Cir.1990); *see also United States v. Miller*, 929 F.2d 364 (8th Cir.1991); *United States v. Schmidt*, 922 F.2d 1365, 1369 (8th Cir. 1991). While the prosecutor's use of this information in his closing argument may have been improper, it did not rise to the level of egregious error required for reversal under the plain error standard. Given the overwhelming evidence of Wilson's guilt presented to the jury, the prosecutor's error did not result in a miscarriage of justice. Furthermore, the prosecutor's improper conduct did not even rise above the harmless error threshold. *Carter*, 901 F.2d at 685 (overwhelming evidence found when package contained drugs, defendant's name, and defendant was seen picking up package and throwing it out of car). *See generally Arizona v. Fulminante*, — U.S. —, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (discussing applicability of harmless error standard).

### B. Use of Pretrial Services Statements for Impeachment

 Wilson also argues that the government improperly used statements he made at the pretrial services interview to impeach him. Wilson contends that such use violates the congressional mandate found in 18 U.S.C. § 3153 (1988). This section provides that information furnished during the course of pretrial services "is not admissible *on the issue of guilt* in a criminal judicial proceeding."[3] 18 U.S.C.

§ 3153(c)(3) (emphasis added). Therefore, the question is whether impeaching a witness constitutes admission of evidence on the "issue of guilt" as intended by Congress. It does not. Impeachment evidence addresses credibility and is distinct from substantive guilt evidence. Therefore, under a plain reading of the statute, the government can use pretrial services interview statements to impeach a defendant. *But see United States v. McLaughlin*, 777 F.2d 388, 392 (8th Cir.1988) ("[W]e do have concerns that the congressional intent as expressed in the confidentiality requirement may be transgressed when the government uses information obtained during the pretrial services interview for purposes unrelated to pretrial detention or release").

### III.

Therefore, because the use of impeachment evidence does not require reversal under the plain error standard and because the use of the pretrial services statement was not error, we affirm.

---

**2.** The prosecutor said: "Now, all of these fit the profile that Officer Giller of the airport narcotics unit testified is consistent with people involved in narcotics trafficking." Tr. at 162.

**3.** The statute provides for three exceptions which are not relevant in this case.