UNITED STATES of America, Appellee,

v.

Maurice Lynell SMITH, Appellant.

No. 91–3824.

United States Court of Appeals,
Eighth Circuit.

Submitted May 12, 1992.

Decided Aug. 10, 1992.

Virginia Villa, Minneapolis, Minn., argued (Daniel M. Scott and Lara Hammel, on the brief), for appellant.

Andres S. Dunne, Minneapolis, Minn., argued, for appellee.

Before McMILLIAN, JOHN R. GIBSON and MAGILL, Circuit Judges.

McMILLIAN, Circuit Judge.

Maurice Lynell Smith appeals from a final judgment entered in the United States District Court [1] for the District of Minnesota, upon a jury verdict, finding him guilty of two counts of bank robbery, in violation

---

1. The late Honorable Edward J. Devitt, Senior United States District Judge for the District of Minnesota.

of 18 U.S.C.A. § 2113(a) (West Supp.1992). The district court sentenced Smith to 87 months imprisonment concurrently on each count, three years supervised release, and a special assessment of $100.00. For reversal, Smith argues that (1) the district court erred in denying his motion to suppress evidence seized pursuant to a search warrant, (2) the evidence was insufficient to find him guilty of the March 12, 1991, bank robbery, (3) the district court erred in applying a two-level enhancement for an express threat of death, and (4) the district court erred in allowing the government to use a statement Smith made to pretrial services as impeachment during cross-examination. For the reasons discussed below, we affirm the judgment of the district court.

## BACKGROUND FACTS

On January 30, 1991, a man walked into the Metropolitan Federal Bank in downtown Minneapolis and handed a note to the teller which stated, "Please give me all your hundreds, fifties and twenties." The teller looked at the robber and said, "Is this a joke?" The robber put his right hand under his coat lapel as if he might be concealing a weapon and responded, "You don't want to find out." The teller gave the robber the money and the robber grabbed the note and walked out of the bank. A total of $4,960.00 was stolen. The teller and other witnesses provided descriptions of the robber and later identified Maurice Smith in photograph spreads as the robber.

On March 12, 1991, a man entered the First National Bank of the Lakes and gave the teller a note which stated, "All your large and twenties. This is a robbery. Give the note back." The teller began giving the robber the money from her drawer. Another teller noticed the robbery and reached for his alarm button, but the robber told him to put his hands on the counter and then demanded his "hundreds, fifties and twenties." During the entire robbery, the robber held his right hand under his coat lapel as if he was concealing a gun. The robber stole a total of $3,700.00. The tellers provided descriptions of the robber

and also identified Smith in photograph spreads as the robber.

The FBI circulated photographs taken by the banks' surveillance cameras. Jeanne Innes, who worked at a homeless shelter, identified Smith as the man in the photographs. Innes told the FBI agent where Smith lived. Local police and two FBI agents went to Smith's apartment. As they were about to knock on the door, Debra Smith, Maurice Smith's wife, opened the door. The officers removed their guns from their holsters and told Debra Smith that they were trying to located Maurice Smith. The officers asked Debra Smith if Maurice Smith was inside and she said no. The officers "asked" if they could come inside and Debra Smith stepped aside and motioned for them to come in. The officers performed a security sweep of the apartment and then sat down to talk to Debra Smith. As they were talking, one of the officers noticed a gray knit cap on a chair which matched the hat witnesses had described. The officers asked Debra Smith if they could take the hat and she said no. Debra Smith asked the officers to leave and they compiled with her request.

The officers then obtained a search warrant for the apartment, using as evidence of probable cause, the knit cap which they had observed. The officers executed the search warrant and recovered the knit hat and notes in a trash can. No significant amounts of cash were found.

Smith was arrested in Las Vegas a few weeks later and charged with two counts of bank robbery. The district court denied Smith's pretrial motion to suppress the evidence seized from his apartment and the case proceeded to trial. A jury convicted Smith on both counts and he was sentenced to 87 months imprisonment and three years supervised release. Smith now appeals.

## DISCUSSION

*Motion to Suppress*

Smith argues that his wife did not give valid consent for the officers to enter his apartment. Smith argues that his wife was confronted by four officers with their guns drawn, and, therefore, by stepping aside she was not giving voluntary consent.

Because the officers were illegally in the apartment when they observed the knit cap, Smith argues that the knit cap could not be used as evidence of probable cause to obtain the search warrant. Without the knit cap, Smith argues that the officers would not have had probable cause to obtain a search warrant and, therefore, the evidence seized should have been. suppressed.

The government argues that the district court's finding that Debra Smith gave valid consent for the officers to enter the apartment was not clearly erroneous. The government argues that because the officers used no force and Debra Smith stepped aside and motioned for the officers to enter, valid consent was given.

We review the district court's decision under the clearly erroneous standard. *United States v. Chaidez*, 906 F.2d 377, 380 (8th Cir.1990). Debra Smith's consent to enter the apartment must have been "freely and voluntarily given" to constitute valid consent. *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968). To determine what constitutes voluntary consent, the court must examine the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). It is not necessary for the government to prove that Debra Smith knew she had the right to refuse the officers entrance. *Id.* at 232–33, 93 S.Ct. at 2050. "Rather, it is only by analyzing all the circumstances of an individual consent that it can be ascertained whether in fact it was voluntary or coerced." *Id.* at 233, 93 S.Ct. at 2050.

■ We hold that the district court's finding that Debra Smith gave voluntary consent for the officers to enter the apartment is not clearly erroneous. While the officers did draw their weapons when Debra Smith opened the door, there was no evidence that they immediately demanded entry as in *United States v. McIntosh*, 857

F.2d 466, 467 (8th Cir.1988). The officers had a brief conversation with Debra Smith before requesting entry into the apartment. Debra Smith never refused the officers entry, but instead stepped aside and motioned for the officers to enter. No physical force or threats were used by the officers at any time. The officers immediately left the apartment when Debra Smith requested that they do so.

Because the officers were lawfully in the apartment, the knit hat which they noticed in plain view while sitting on the couch was properly used as evidence of probable cause to obtain a search warrant. *See Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). We hold that the district court's denial of Smith's motion to suppress was not clearly erroneous.

*Evidence of Intimidation for March 12th Robbery*

Bank robbery is defined in 18 U.S.C.A. § 2113(a) (West Supp.1992) (emphasis added) as follows: "Whoever, by force and violence, or *by intimidation*, takes, or attempts to take, from the person or presence of another … any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of any bank."

Smith argues that there was insufficient evidence to prove the March 12th robbery because the necessary element of intimidation was not present.[2] Smith argues that no threats were made during the March 12th robbery, and although one teller testified to being scared, her fear was because she had never been robbed before and not because of anything the robber did. There was no evidence that he was in fact armed during the robbery.

The government argues that the demand note, the robbers instructions and conduct, including his keeping his right hand under his coat as if he was holding a gun, was sufficient to prove intimidation.

---

**2.** The government agrees that the March 12, 1991, robbery did not involve taking by force and violence, but instead argues that the intimidation element of 18 U.S.C.A. § 2113(a) (West

Supp.1992) was met. Smith admits that there was sufficient evidence of intimidation for the January 30, 1991, robbery.

In evaluating Smith's claim, this court must examine the evidence in the light most favorable to the government and must draw all reasonable inferences in favor of the government, and can only reverse if we conclude that a reasonable factfinder could not have found guilt beyond a reasonable doubt. *United States v. Whitfield*, 874 F.2d 591, 592 (8th Cir.1989); *United States v. Matra*, 841 F.2d 837, 840 (8th Cir.1988).

■ Intimidation involves doing something that would make an ordinary person in the teller's position fear bodily harm, but it is not necessary to prove actual fear on the part of the teller. *United States v. Higdon*, 832 F.2d 312, 315 (5th Cir.1987), *cert. denied*, 484 U.S. 1075, 108 S.Ct. 1051, 98 L.Ed.2d 1013 (1988); *United States v. Brown*, 412 F.2d 381, 383–84 & n. 4 (8th Cir.1969) (*Brown*).

■ We hold that Smith's conduct during the March 12, 1991, robbery was sufficient for the jury to find intimidation. Smith presented the first teller with a demand note that indicated it was a robbery, held his hand under his coat as if he was holding a gun, and when a second teller noticed the robbery, Smith instructed that teller to put his hands on the counter and give Smith his large bills.

Smith cites as support *United States v. Wagstaff*, 865 F.2d 626 (4th Cir.) (*Wagstaff*), *cert. denied*, 491 U.S. 907, 109 S.Ct. 3193, 105 L.Ed.2d 701 (1989), where no intimidation was found. However *Wagstaff* is distinguishable because Smith's conduct in the present case goes beyond that of the defendant in *Wagstaff*. In *Wagstaff*, the defendant walked into a savings and loan and began taking money from an open teller's cash drawer. *Id.* at 627. The defendant had no weapon and did not say anything or make any threatening gestures. *Id.* Smith, on the other hand, gestured in a manner that made him appear to have a weapon and gave oral instructions to two tellers.

Instead, the present case is similar to *United States v. Hopkins*, 703 F.2d 1102

(9th Cir.) (*Hopkins*), *cert. denied*, 464 U.S. 963 (1983). In *Hopkins*, the defendant handed the teller a note which asked for all of her large bills and stated that it was a robbery. *Id.* at 1103. The court concluded that "the threats implicit in [the defendant's] written and verbal demands for money provide sufficient evidence of intimidation to support the jury's verdict." *Id.*; *see United States v. Henson*, 945 F.2d 430, 439 (1st Cir.1991) (note demanding money was sufficient to prove intimidation); *United States v. Amos*, 566 F.2d 899, 901 (4th Cir.1977) (per curiam) (robber's hand in pocket, telling bank manager not to sound alarm, and telling tellers to hand over money sufficient for intimidation); *United States v. Johnston*, 543 F.2d 55, 56–57 (8th Cir.1976) (robber's hand in pocket, although later determined he was holding a pocket knife, and demanding money sufficient to prove intimidation); *United States v. Harris*, 530 F.2d 576, 579 (4th Cir.1976) (note and hand in pocket sufficient for intimidation); *Brown*, 412 F.2d at 383–84 (note threatening to kill teller if teller did not comply sufficient to prove intimidation despite fact that teller did not believe threat and yelled at robber to shown her his gun or get out).

*Enhancement for Express Threat of Death*

■ In determining Smith's base offense level, the district court applied a two-level increase for an express threat of death in the January 30, 1991, robbery. U.S.S.G. § 2B3.1(b)(2)(D) (1991).[3] Smith argues that this enhancement was improper because his statement "You don't want to find out" did not amount to an express threat of death.

The government argues that the statement combined with Smith's gesture placing his hand under his coat as if he was holding a gun amounted to an express threat of death. We agree.

The commentary to the guidelines explains what is meant by "express threat of death" and provides some examples of

---

**3.** This enhancement is now codified at U.S.S.G. § 2B3.1(b)(2)(F).

what constitutes an express threat of death:

> An "express threat of death," as used in subsection (b)(2)(D), may be in the form of an oral or written statement, act, gesture, or combination thereof. For example, an oral or written demand using words such as ... "Give me the money or I will shoot you", *"Give me your money or else (where the defendant draws his hand across his throat in a slashing motion)"* ... would constitute an express threat of death. The court should consider that the intent of the underlying provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, significantly greater fear than that necessary to constitute an element of the offense of robbery.

*Id.* note 7 (emphasis added).

While this circuit has not analyzed this guideline provision previously, both the Ninth and Eleventh Circuits have specifically addressed what constitutes an express threat of death. The Ninth Circuit held that both the statement not to pull the alarm or "my friend will start shooting," *United States v. Strandberg*, 952 F.2d 1149, 1151–52 (9th Cir.1991) (*Strandberg*), and a demand note which stated "Give Me All Your Money or I'll Shoot," *United States v. Eaton*, 934 F.2d 1077, 1079 (9th Cir.1991) (*Eaton*), are express threats of death. However, the Eleventh Circuit held that a defendant, who had no weapon nor pretended to have a weapon, who, after completing the robbery, told the teller if she did anything funny he would be back had not made an express threat of death. *United States v. Tuck*, 964 F.2d 1079 (11th Cir.1992) (*Tuck*). The Eleventh Circuit distinguished *Strandberg* and *Eaton* and concluded:

> The threat implied physical harm, and may well have implied death. However, the threat of death was simply not direct, distinct or express. Unlike the threats to shoot in the Ninth Circuit cases, [the defendant's] statement, made without a weapon, was not express that he intend-

ed to engage in conduct that would cause death or put the teller in a reasonable apprehension of the loss of her life.

*Id.* at 1081 (footnote omitted).

We conclude that in the present case the combination of threatening the teller with the statement "You don't want to find out" and the appearance as if he had a gun under his coat in the January 30th robbery constituted an express threat of death and instilled greater fear than necessary to carry out the robbery. Smith went beyond the defendant in *Tuck* because Smith appeared as if he might have a gun under his coat. Additionally, Smith's threat was immediate: if the teller did not comply, he would carry out his threat. The defendant's threat in *Tuck*, on the other hand, was indefinite: sometime in the future he might come back.

## Use of Statement to Pretrial Services

■ At trial, Smith testified in his own defense. On cross-examination, the prosecutor asked Smith if he remembered describing himself to a pretrial services officer as a "hustler" and someone who does "snow jobs." Defense counsel objected, but the district court allowed the question. Smith argues that this is improper impeachment evidence.

The government argues that this evidence was proper impeachment to show Smith's propensity for untruthfulness in the past. The government also cross-examined Smith about various other "lies."

Information told to pretrial services officers "is not admissible on the issue of guilt in a criminal judicial proceeding." 18 U.S.C. § 3153(c)(3). In *United States v. Wilson*, 930 F.2d 616 (8th Cir.) (*Wilson*), cert. denied, —— U.S. ——, 112 S.Ct. 208, 116 L.Ed.2d 167 (1991), this court addressed the issue of the use of comments made to pretrial services to impeach a defendant. In *Wilson*, the defendant told a pretrial services officer that he had received $45,000.00 in worker's compensation benefits. *Id.* at 617. During his trial for possession with the intent to distribute methamphetamine, the defendant testified that he had received $68,000.00. *Id.* at 618.

The district court allowed the government to use the defendant's statement to pretrial services to impeach him. *Id.* This court held that the district court did not err in allowing this impeachment because the statement to pretrial services was used as impeachment evidence, not as evidence of guilt. *Id.* at 619.

In the present case, the statements made to pretrial services were not used as substantive evidence of guilt, that is, to show that Smith was guilty of the bank robberies, but instead as general credibility impeachment as in *Wilson.* While we discourage the use of information given to pretrial services because of the possible chilling effect on defendants' willingness to speak to pretrial services, we hold that the district court did not error in allowing pretrial services statements to be used to impeach Smith.

Accordingly, we affirm the judgment of the district court.