UNITED STATES of America,
Plaintiff–Appellee,

v.

Jerry Lee FRANCE, Defendant–
Appellant.

No. 94–50245.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 3, 1995.

Decided June 16, 1995.

Sylvia Torres–Guillen, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellant.

Stephen J. McConnell, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: FLETCHER, BRUNETTI, and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

Jerry Lee France appeals from his 96–month sentence, imposed following his guilty pleas, for two counts of bank robbery in violation of 18 U.S.C. § 2113(a). France contends that the district court erred by increasing his offense level under the United States Sentencing Guidelines for making an "express threat of death" during one of the robberies. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I.

On October 26, 1993, France was indicted for four counts of bank robbery. Pursuant to a plea agreement, France pleaded guilty to two counts in exchange for the Government dismissing the two remaining counts. The plea agreement incorporated a statement of facts which stipulated that on September 8, 1993, France robbed a bank using a demand note which read, "Don't press any buttons, don't tell anyone, just give me the money." The plea agreement further stipulated that on September 25, 1993, France robbed another bank using a demand note stating, "Give me all the 100s and 50s in your drawer. I have dynamite."

At France's sentencing hearing, the district court ruled that France's statement, "I have dynamite," in the September 25 demand note was an express threat of death and

imposed a two-level upward adjustment.[1] The court found that a reasonable person would have inferred an express threat of death from the statement, noting the pervasive nature of dynamite and its ability to blow up the entire bank. Based upon an offense level of 23 and a criminal history category of 5, the resulting sentencing range was 84 to 105 months. The court sentenced France to 96 months of imprisonment. France timely appeals.

## II.

■■■■ "We review *de novo* the district court's interpretation and application of the Sentencing Guidelines." *United States v. Buenrostro–Torres,* 24 F.3d 1173, 1174 (9th Cir.1994). We review for clear error the findings of facts underlying the district court's sentencing decision. *Id.*

## III.

■■■ France contends that he did not make an "express threat of death" during the charged bank robberies, and that the district court erred in ruling that the mere indication of the possession of dynamite, without any further threat to use the dynamite to harm the victim teller, was sufficient to warrant the two-level enhancement under U.S.S.G. § 2B3.1(b)(2)(F). We disagree.

The sentencing guidelines provide for a two-level upward adjustment to the defendant's base offense level if he makes "an express threat of death" during the commission of a robbery. U.S.S.G. § 2B3.1(b)(2)(F). Application Note 6 in the commentary provides:

> An "express threat of death," as used in subsection (b)(2)(F), may be in the form of an oral or written statement, act, gesture, or combination thereof. . . . [T]he intent of the underlying provision is to provide an increased offense level for cases in which

the offender(s) engaged in conduct that would instill in a reasonable person, who is the victim of the offense, significantly greater fear than that necessary to constitute an element of the offense of robbery.

U.S.S.G. § 2B3.1, comment. (n.6). Although "express" is not defined in section 2B3.1, the commentary lists several examples of express threats. Each example contains either words or gestures indicating the speaker's intent to cause a potentially fatal consequence. *See id.* (citing as one example the statement "Give me the money or I will pull the pin on the grenade I have in my pocket").

We have identified statements and demand notes which have constituted an "express threat of death" under the sentencing guidelines. *See United States v. Hoslett,* 998 F.2d 648, 659–60 (9th Cir.1993) (upholding adjustment based on statement that "This is a robbery. Give me the money or I will shoot."); *United States v. Bachiero,* 969 F.2d 733, 734 (9th Cir.1992) (per curiam) (upholding adjustment based on a demand note reading "Your money or your life, quick."); *United States v. Strandberg,* 952 F.2d 1149, 1151–52 (9th Cir.1991) (upholding adjustment based on admonishment not to "pull the alarm or my friend will start shooting"); *United States v. Eaton,* 934 F.2d 1077, 1079 (9th Cir.1991) (upholding adjustment based on notes reading "Give me all your money or I'll shoot"). "Section 2B3.1(b)(2)(F) does not require that the defendant state that he intends to kill the teller if his demands are not met." *Strandberg,* 952 F.2d at 1151; *see also Hoslett,* 998 F.2d at 659–60; *Eaton,* 934 F.2d at 1079. We have interpreted Application Note 6 as requiring the district court to apply an objective, rather than a subjective, inquiry into how a victim perceived the threat. *Strandberg,* 952 F.2d at 1151. What is determinative is whether a reasonable person, given the conduct of the defendant and the context in which it occurred, would expe-

---

**1.** The presentence report (PSR) prepared by the Probation Office referenced facts which contradicted the statement of facts incorporated into the plea agreement and which suggested that France's demand notes may have been more elaborate than as described in the stipulated statement of facts. The district court decided that, for sentencing purposes, "the statements attributed to the defendant will be those reflected in the statement of facts attached to the plea agreement," and the government has not appealed this decision. Accordingly, like the district court, we confine our analysis to the demand notes as described in the statement of facts attached to the plea agreement.

rience significantly greater fear than the level of intimidation necessary to constitute an element of the offense of robbery. *See Strandberg*, 952 F.2d at 1151.[2]

Here, France handed the teller a demand note reading, "Give me all the 100s and 50s in your drawer. I have dynamite."[3] As in *Strandberg*, "[w]e are persuaded that a reasonable person [reading France's demand note] would experience significantly greater fear than the level of intimidation that is necessary to constitute an element of the offense of robbery." *Id.* It was not necessary, for purposes of applying section 2B3.1(b)(2)(F), that France state that he intended to blow up the teller if his demands were not met. *See id.* The words France used would create in a reasonable person the same amount of fear as the grenade example in the commentary to section 2B3.1 ("Give me the money or I will pull the pin on the grenade I have in my pocket."). *See* U.S.S.G. § 2B3.1, comment. (n.6); *see also Hoslett*, 998 F.2d at 660.

France urges us to adopt the Eleventh Circuit's approach to § 2B3.1(b)(2)(F).[4] The Eleventh Circuit has taken a more restrictive approach than ours to interpreting "express threat of death." *See United States v. Moore*, 6 F.3d 715, 721–22 (11th Cir.1993) (holding that statement, "I have a gun and nothing to lose. 100s or 50s no dye money," was not an express threat of death within the meaning of section 2B3.1(b)(2)(F)); *United States v. Canzater*, 994 F.2d 773 (11th Cir. 1993) (robber who threatened a teller with the words "I have a gun," while simultaneously putting his hand into his pants as if to grab a firearm, did not make express threat of death); *United States v. Tuck*, 964 F.2d 1079 (11th Cir.1992) (no express threat

where defendant said, "don't do anything funny or I'll be back").

The Eleventh Circuit case law is based upon *Tuck.* There, the Eleventh Circuit held that although the threat "don't do anything funny or I'll be back," "implied physical harm, and may well have implied death," an express threat of death must be "direct, distinct, or express." *Id.* at 1080, 1081. The court's reasoning was based in large part on its interpretation of the guideline's commentary. *Tuck* declined to "read broadly the commentary language that applies the enhancement to defendants who have engaged in conduct that may instill 'significantly greater fear than that necessary to constitute an element of the offense of robbery.'" *Id.* at 1081. The court observed that the commentary did not have the force of law, found that section 2B3.1(b)(2)(F) was not ambiguous, and noted that "read broadly, this portion of the commentary may be inconsistent with the guideline." *Id. Tuck*, however, was decided prior to the United States Supreme Court's declaration that the sentencing guidelines commentary was to be considered authoritative "unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, — U.S. —, —, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993). Thus, we do not consider Eleventh Circuit case law persuasive on this issue.

Furthermore, the weight of authority is to the contrary. The Seventh, Eighth, and Tenth Circuits have followed reasoning similar to that in *Strandberg* and *Eaton*, holding that statements and other conduct sufficed to find an "express threat of death" in the absence of a robber's explicit threat to kill the victim. *See United States v. Hunn*, 24

---

**2.** We do not find the words "express threat of death" in the guideline, or the commentary to the guideline, to be ambiguous. Therefore, contrary to France's argument, resort to the rule of lenity would be inappropriate. *See United States v. Bass*, 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971).

**3.** France is correct that the September 8 demand note (as set forth in the plea agreement) did not include any reference to dynamite. This does not affect the calculation of the offense level in this case, however, because of the multiple count

adjustment (in which the greater of the two adjusted offense levels is used). *See* U.S.S.G. §§ 1B1.2(c), 3D1.1, 3D1.4.

**4.** France also cites *United States v. Coe*, 891 F.2d 405 (2d Cir.1989). However, *Coe* involved an upward departure for the defendant's claimed possession of a firearm, not an enhancement pursuant to U.S.S.G. § 2B3.1(b)(2)(F), *see id.* at 408, so the case does not advance France's claim.

F.3d 994, 996–98 (7th Cir.1994); *United States v. Bell,* 12 F.3d 139, 140 (8th Cir.1993) (following *United States v. Smith,* 973 F.2d 1374, 1375 (8th Cir.1992) (when teller asked robber if he was joking, robber said "You don't want to find out," and kept his hand under his coat as if he had a gun)); *United States v. Lambert,* 995 F.2d 1006, 1008 (10th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 333, 126 L.Ed.2d 278 (1993). *Compare Moore,* 6 F.3d at 722 (appearing to require mention of death to the victim teller in the demand note) *with Strandberg,* 952 F.2d at 1151 ("Section 2B3.1(b)(2)(F) does not require that the defendant state that he intends to kill the teller if his demands are not met.").

In *Hunn,* the Seventh Circuit relied primarily upon the Eighth Circuit's approach in *Smith,* 973 F.2d at 1378, and held that "a bank robber's pointing his hand through his coat pocket, while claiming to have a gun, can be a sentence-enhancing, death-threat expression under the plain text of Guideline § 2B3.1(b)(2)(F)." *Hunn,* 24 F.3d at 997. The Seventh Circuit observed that "[i]n choosing between the Eighth and Eleventh Circuit's approaches, we find the latter's reading of § 2B3.1(b)(2)(F) to be unnecessarily cramped." *Id.; see also United States v. Robinson,* 20 F.3d 270, 277 (7th Cir.1994) ("To the extent that the Eleventh Circuit has insisted on more explicit language before finding an 'express threat of death,' we disagree with its holdings.").

We agree with the Seventh Circuit's assessment of the Eleventh Circuit's approach. France's contention that the enhancement could apply only if he used words to the effect that he would use the dynamite if the teller failed to act, is "unnecessarily cramped." In light of the commentary's provision that "[a]n 'express threat of death' . . . may be in the form of an oral or written statement, act, gesture, or combination thereof," U.S.S.G. § 2B3.1, comment. (n.6), it is inconceivable that the Sentencing Commission intended to preclude the adjustment's applicability in this case simply because France failed to add to his statement the magic words, "and I will use the dynamite if you don't give me the money." We also reject France's attempt to distinguish *Hunn* and *Smith* because they involved oral demands plus gestures simulating a concealed handgun, while France did not make any gestures indicating he had dynamite under his shirt. *See Hoslett,* 998 F.2d at 660 (rejecting defendant's attempt to distinguish *Eaton* because the defendant in that case had a simulated gun, whereas he did not brandish anything resembling a weapon).

Finally, we need not decide in this case whether § 2B3.1(b)(2)(F) would apply to a defendant who announced during the robbery that he had a gun. In this case France claimed to have dynamite, which could blow up the entire bank, not just the people in the immediate vicinity. The district court's finding that a reasonable person would have inferred an express threat of death from the statement "I have dynamite" was not clearly erroneous when considered in the context of a bank robbery. *See Buenrostro–Torres,* 24 F.3d at 1174.

## IV.

An express threat need not be specific in order to instill the requisite level of fear in a reasonable person. *See Strandberg,* 952 F.2d at 1151–52. The level of fear a reasonable victim would experience when confronted with a robber's announcement that he possessed dynamite constitutes "significantly greater fear" than is necessary to commit a robbery. *See id.* Thus, the district court properly interpreted and applied U.S.S.G. § 2B3.1(b)(2)(F). The district court's factual findings were not clearly erroneous. Accordingly, the district court did not err by adjusting France's offense level upward.

AFFIRMED.