92 F.3d 1195
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony Gregg PAYTON, Defendant-Appellant.
 No. 95-10097.
 United States Court of Appeals, Ninth Circuit.
 Argued Feb. 12, 1996.
Withdrawn from Submission Feb. 13, 1996.
Resubmitted June 26, 1996.
Decided July 31, 1996.
 
 1
 Before: CANBY and KLEINFELD, Circuit Judges, and COLLINS, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Appellant Anthony Gregg Payton was indicted on charges of conspiracy to manufacture and distribute methamphetamine, manufacture of methamphetamine, distribution of methamphetamine, and two counts of possession with intent to distribute methamphetamine. The indictment covered Payton's conduct between December, 1992 and September, 1993. At trial, Payton presented an entrapment defense, but was ultimately convicted by a jury on all counts. Payton was sentenced to 176 months in the custody of the Bureau of Prisons. He is currently serving his sentence in the Federal Correctional Institution at Terminal Island.
 
 
 4
 Payton appeals his conviction and sentence on four grounds. First, Appellant asserts that because he agreed to the civil forfeiture of his Daihatsu jeep, his later criminal conviction violated his Fifth Amendment right against double jeopardy. Second, Appellant contends that the district court committed reversible error by admitting videotapes made by a government informant unable to testify at trial. Third, Appellant argues that the district court incorrectly failed to instruct the jury on the timing of predisposition as part of Payton's entrapment defense. Finally, Appellant asserts that the district court incorrectly calculated his sentence by including hydrochloride salts in determining the weight of the methamphetamine.
 
 
 5
 The Court has jurisdiction over this criminal appeal pursuant to 28 U.S.C. § 1291. For the reasons discussed below, we affirm.
 
 I. CIVIL FORFEITURE AND DOUBLE JEOPARDY
 
 6
 Appellant first appeals his conviction on Double Jeopardy grounds. On February 11, 1994, Appellant and the Drug Enforcement Agency ("DEA") entered into a Settlement Agreement whereby Appellant consented to the administrative forfeiture of his Daihatsu jeep. Appellant contends that because this forfeiture punished him for the same conduct on which his later conviction was based, his conviction violates the Double Jeopardy Clause.
 
 
 7
 However, in light of the United States Supreme Court's recent decision in United States v. Ursery, --- U.S. ----, --- S.Ct. ----, 1996 WL 340815, 96 Daily Journal D.A.R. 7384 (No. 95-345) (June 24, 1996), reversing United States v. $405,089.23 United States Currency, 33 F.3d 1210 (9th Cir.1994), amended by, 56 F.3d 41 (9th Cir.1995) and United States v. Ursery, 59 F.3d 568 (6th Cir.1995), Appellant's argument has little merit. In Ursery, the Supreme Court held that in rem civil forfeitures performed pursuant to 21 U.S.C. § 881 do not constitute "punishment" for purposes of the Double Jeopardy Clause. Ursery, 1996 WL 34085, * 3.
 
 
 8
 Therefore, because the forfeiture of Appellant's Daihatsu did not constitute punishment, his subsequent criminal conviction cannot be considered subsequent punishment in violation of the Double Jeopardy Clause. Accordingly, Appellant's conviction is affirmed on this ground.[3]
 
 II. ADMISSION OF THE VIDEOTAPES
 
 9
 As a general rule, a district court's evidentiary rulings are reviewed for abuse of discretion. United States v. Manning, 56 F.3d 1188, 1196 (9th Cir.1995); United States v. Vgeri, 51 F.3d 876 (9th Cir.1995). Therefore, evidentiary rulings will not generally be reversed unless there has been a clear error of judgment. Washington State Dept. of Transportation v. Washington Natural Gas Co., 59 F.3d 793, 805 (9th Cir.1995). Thus, a district court's decisions to admit evidence under exceptions to the hearsay rule are reviewed for abuse of discretion. United States v. Gilbert, 57 F.3d 709, 711 (9th Cir.1995); United States v. Warren, 25 F.3d 890, 895 (9th Cir.1994). A district court's decision regarding the authenticity of evidence is similarly reviewed for abuse of discretion. United States v. Childs, 5 F.3d 1328, 1335 (9th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1385 (1994).
 
 
 10
 Alleged violations of the Confrontation Clause are reviewed de novo. United States v. Yazzie, 59 F.3d 807, 812 (9th Cir.1995). However, "[a] Confrontation Clause violation does not require reversal if the error was harmless beyond a reasonable doubt." Toolate v. Borg, 828 F.2d 571, 575 (9th Cir.1987).
 
 
 11
 Appellant argues that the district court's admission of videotapes (containing Appellant's incriminating statements) made by a government informant unable to testify at trial was an abuse of discretion and a violation of the Confrontation Clause. Appellant also contends that the videotapes were inadmissible hearsay because they were essentially untrustworthy.
 
 
 12
 Appellant's hearsay argument is entirely misplaced. First, Appellant's statements on the tape were clearly admissible as admissions under Federal Rule of Evidence 801(d)(2). United States v. Castro, 887 F.2d 988, 999-1000 (9th Cir.1988). Moreover, Appellant admitted the truth of many of the statements made on the tapes. Second, the videotaped statements made by the government informant himself were not offered for their truth (and Appellant does not argue this); consequently, they were not hearsay. Indeed, many of the government informant's statements were admittedly (and intentionally) false.
 
 
 13
 Therefore, Appellant's challenge is not really to the admissibility of the recorded statements. Rather, Appellant challenges the authenticity of the tapes themselves, and whether Appellant's statements were shown in the proper context. Thus, Payton's argument is really more of a foundation argument than a hearsay argument. Accordingly, Appellant contends that because the government informant was unavailable to testify (he had committed suicide), he could not lay a proper foundation for the admission of the tapes. In addition, Appellant asserts that his Confrontation Clause rights were violated because he could not cross-examine the government informant regarding the authenticity of the tapes.
 
 
 14
 Under Federal Rule of Evidence 901, the authentication requirement is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir.), cert. denied, 502 U.S. 854 (1991). The foundational requirement for the introduction of recorded statements "differs widely." United States v. King, 587 F.2d 956, 961 (9th Cir.1978). In King, this Court found that, while helpful, the seven factor analysis in United States v. McKeever, 169 F.Supp. 426 (S.D.N.Y.1959), rev'd on other grounds, 271 F.2d 669 (2d Cir.1959) was not a dispositive, bright-line test. King, 587 F.2d at 961. Rather, the Court found that the ultimate standard is whether the trial court is "satisfied that the recording is accurate, authentic, and generally trustworthy." Id.; see also United States v. Buchanan, 70 F.3d 818, 827 (5th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1340 (1996) (ultimate question is whether "the recording accurately reproduces the auditory experience.").
 
 
 15
 Although the government informant's suicide prevented him from testifying to the authenticity of the tapes that he made, the district court nevertheless found the recordings accurate, authentic, and generally trustworthy. Therefore, the court admitted the tapes into evidence. The district court rested its conclusion on several factors. First, the court noted that the videotapes have a counter in the corner of the picture that displays the time and date. The time display "continuously moves forward in seconds." ER at p. 107. Second, the parties stipulated that the government had an FBI expert who would testify that the video recordings were "original with no stops/starts/pauses/breaks or discontinuities and have not been altered or tampered with." ER at p. 107. Third, the government had a witness, DEA Agent John Shipman, who was ready to testify that he had set up the video equipment at the government informant's shop and personally instructed the informant on its use. Fourth, the tapes depict conversations in which Payton enters the room at the beginning of the conversation and leaves the room before the tape ends. Fifth, the recording device recorded sound and images simultaneously, so that there was less of a risk that the conversations were taken out of context. Finally, Judge Lynch viewed the tapes himself in camera and found them to be generally trustworthy. ER at p. 108.[4]
 
 
 16
 Upon reviewing all these factors, the district court found the tapes to be authentic, accurate, and generally trustworthy, despite the informant's unavailability. The court rested its legal conclusion primarily upon United States v. Stearns, 550 F.2d 1167 (9th Cir.1977). In Stearns, as here, there was "little direct testimony concerning the technical accuracy" of the photographs that were admitted. However, this Court found that a trial court could find foundation by looking to external (e.g. testimony of experts) and internal (e.g. a date/time stamp or the images themselves) circumstantial evidence of authenticity. Id. at 1070-71; see also United States v. Rembert, 863 F.2d 1023, 1026-27 (D.C.Cir.1988) (photographs made at ATM machines were admissible because of various factors, such as testimony concerning the loading of film, the existence of a date/time stamp, and the event recorded itself).
 
 
 17
 Appellant has not presented any evidence of irregularities or raised any spectre of inaccuracy. Appellant simply intimates that the informant had the opportunity to alter the tapes, and that the informant could have edited the tapes to counter the date/time stamp. However, upon reviewing the tapes, as well as all the factors discussed above, the district court found that the tapes were authentic, accurate, and generally trustworthy. Appellant has not provided any evidence to the contrary. Therefore, we find that the district court did not abuse its discretion in admitting the videotapes.
 
 
 18
 Furthermore, we find that the district court's admission of the tapes did not violate Appellant's Confrontation Clause rights. Appellant asserts that because the informant could not testify, Appellant was denied the opportunity to question him about the context of the tape recordings, in violation of the Confrontation Clause. For all the reasons discussed above, even without the informant's authentication testimony, the videotapes showed the "particular guarantees of trustworthiness" necessary to be admissible under the Confrontation Clause. Idaho v. Wright, 497 U.S. 805, 818 (1990); see Webb v. Lewis, 44 F.3d 1387, 1391 (9th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 2002 (1995). Upon reviewing the "totality of the circumstances" ( Webb, 44 F.3d at 1391) concerning the authenticity and accuracy of the tapes (such as the fact that the tapes contained uninterrupted date and time counters), we find that Appellant's inability to cross-examine the informant concerning the context in which the tapes were made did not violate the Confrontation Clause. Indeed, as the other party to the conversations, Appellant himself took the opportunity to discuss that context during his trial testimony. Accordingly, we find no violation of the Confrontation Clause.[5] Therefore, the district court's ruling is affirmed on this ground.
 
 
 19
 III. DETERMINATION OF THE AMOUNT OF METHAMPHETAMINE FOR
 
 SENTENCING PURPOSES
 
 20
 The district court's interpretation and application of the Sentencing Guidelines themselves are both reviewed de novo. United States v. Oliver, 60 F.3d 547, 554 (9th Cir.1995); United States v. France, 57 F.3d 865, 866 (9th Cir.1995). However, the district court's factual findings in the sentencing phase are reviewed for clear error. Oliver, 60 F.3d at 554 (citing United States v. Buenrostro-Torres, 24 F.3d 1173, 1174 (9th Cir.1994)).
 
 
 21
 Under § 2D1.1, "methamphetamine (actual)"[6] ("pure" methamphetamine) is sentenced at an offense level ten times greater than ordinary methamphetamine. See § 2D1.1, Drug Equivalency Table; United States v. Bogusz, 43 F.3d 82, 86 (3d Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 1812 (1995). At the November 3, 1994 sentencing evidentiary hearing, Gary Strongen, a senior forensic chemist with the DEA, testified that the methamphetamine at issue in this case was pure methamphetamine hydrochloride ("crystal meth"), and that the hydrochloride salt accounted for approximately 20% of the methamphetamine hydrochloride. SER at pp. 259-62. Because of the presence of this hydrochloride salt, Appellant argues that, under U.S.S.G. § 2D1.1,[7] the methamphetamine was not "pure," and therefore the district court should have reduced the amount of methamphetamine used for sentencing purposes by 20%. The district court did not do so, and sentenced Appellant based upon more than 1.1 KG of "methamphetamine (actual)." ER at p. 94; see also Pre-Sentence Report ("PSR") at p. 8.
 
 
 22
 We find that Appellant's interpretation of § 2D1.1 is incorrect, and that the district court correctly applied § 2D1.1. Although few courts have addressed the issue, the weight of authority appears to indicate that methamphetamine hydrochloride ("crystal meth") is, in fact, "pure" methamphetamine. At the November 3, 1994 evidentiary hearing, DEA Expert Strongen stated that he considered the "whole thing," including the hydrochloride salt, "pure methamphetamine." See SER at pp. 261-64 (Strongen stating that "methamphetamine hydrochloride is pure" methamphetamine); see also Bogusz, 43 F.3d at 87 ("methamphetamine (actual) refers to the net amount of methamphetamine hydrochloride produced") (emphasis added). Moreover, under § 2D1.1, the hydrochloride salt is considered part of the "actual" methamphetamine. SER at p. 262. The commentary to the Sentencing Guidelines also clearly states that "[a]ny reference to a particular controlled substance in these guidelines includes all salts, isomers, and all salts of isomers." § 2D1.1, Application Note 5. Clearly, salts and isomers are not considered impurities under the Guidelines. In United States v. Decker, 55 F.3d 1509, 1512 (10th Cir.1995), an analogous case, the Tenth Circuit followed this Application Note to hold that the district court had not erred in adding the weight of an isomer in calculating the amount of "methamphetamine (actual)" for sentencing purposes.
 
 
 23
 Therefore, the district court correctly found that, under § 2D1.1, the term "methamphetamine (actual)" includes hydrochloride salts. Accordingly, the district court correctly applied § 2D1.1 by not deducting 20% from the weight of the methamphetamine (actual). Further, the district court correctly calculated Appellant's base level to be 36.[8] Thus, we affirm the district court's sentencing determination.
 
 IV. JURY INSTRUCTION ON PREDISPOSITION
 
 24
 "Whether a jury instruction properly states the law of entrapment is a pure question of law subject to de novo review." United States v. Sterner, 23 F.3d 250, 252 (9th Cir.1994). However, the district court's actual formulation of the instruction (so long as it properly states the law) is reviewed for an abuse of discretion. United States v. Vaandering, 50 F.3d 696, 702 (9th Cir.1995). Because the issue here is whether the instruction properly stated the law of entrapment, the defendant's theory of defense, the proper standard of review is de novo. United States v. Duran, 59 F.3d 938, 941 (9th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 535 (1995).
 
 
 25
 Appellant contends that the district court should have given an instruction stating that predisposition must exist "immediately before the government's contact with defendant Payton preceding the criminal activity." Appellant's Brief at 32 n. 7. In support of this instruction, Appellant cites the Supreme Court's decision in Jacobson v. United States, 503 U.S. 540 (1992).
 
 
 26
 However, Jacobson does not require that the predisposition must exist "immediately" before government agents contacted the defendant. Rather, under Jacobson, "the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents." Jacobson, 503 U.S. at 549.[9] There is no requirement that a jury instruction state that the predisposition must exist immediately before the government conduct. See United States v. Larizza, 72 F.3d 775 (9th Cir.1995) (approving an instruction that did not state that the predisposition must exist "immediately" before the government contact); United States v. Lessard, 17 F.3d 303, 305 (9th Cir.1994) (not discussing an immediacy requirement and holding that an entrapment instruction "must 'tell the jury that the government was required to show that [the defendant] was predisposed to commit the illegal acts prior to the initial contact by government agents."). All that is required of an entrapment jury instruction is that it make clear that the predisposition must have occurred prior to the government contact.
 
 
 27
 Thus, in United States v. Lorenzo, 43 F.3d 1303, 1307 (9th Cir.1995), the Ninth Circuit specifically approved an instruction that stated that "the jury should consider all of the evidence received in this case concerning the intentions and disposition of the Defendant before encountering the law enforcement officers or their agents [.]" Lorenzo, 43 F.3d at 1307 (emphasis in original). The court expressly held that this instruction "sufficiently describes the appropriate time frame for determining a defendant's predisposition." Id. Accordingly, the district court did not err in instructing the jury on predisposition.
 
 
 28
 AFFIRMED.
 
 
 
 *
 Honorable Audrey B. Collins, United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [3]
 Also in light of Ursery, Appellant's subsidiary arguments--that the district court erred by not holding an evidentiary hearing, that Appellant's counsel was ineffective because he agreed to the Settlement Agreement forfeiting the Daihatsu jeep, and that the conviction violated the Due Process Clause--are without merit
 
 
 [4]
 The district court actually excluded some audiotapes in which it found that this minimum standard of authenticity was not established. ER at p. 110-12
 
 
 [5]
 Moreover, in light of the other evidence at trial, and considering the fact that Appellant testified that many of his videotaped statements were accurate, any conceivable error was clearly harmless
 
 
 [6]
 "Methamphetamine (actual)" is the "weight of the controlled substance, itself, contained in the mixture or substance." § 2D1.1(c)
 
 
 [7]
 Because Appellant was sentenced in February 1995, the applicable Guidelines Manual is for 1994
 
 
 [8]
 Aside from his argument concerning hydrochloride salt, Appellant has not challenged the district court's findings regarding the purity of the methamphetamine
 
 
 [9]
 Indeed, Jacobson primarily deals with a situation in which there was no predisposition at all. In Jacobson, the Supreme Court concluded that Government agents had "implant[ed] in the mind" of an "otherwise law-abiding citizen" the idea of violating the law. Jacobson, 503 U.S. at 553 (citing Sorrells v. United States, 287 U.S. 435, 442 (1932)). Furthermore, in Jacobson, the conduct that the Government had alleged constituted "predisposition" was legal when it occurred. After Congress criminalized the conduct, the Petitioner apparently ceased his conduct (at least until Government agents encouraged him to renew it)