UNITED STATES of America, Plaintiff,

v.

**Rene ARAGON, Defendant.**

No. CR–96–20032–JW.

United States District Court,
N.D. California,
San Jose Division.

Oct. 24, 1996.

David Grunbaum, Assistant Federal Public Defender, San Jose, CA, for Rene Aragon.

Parker Singh, Assistant United States Attorney, San Jose, CA, for U.S.

## ORDER DENYING DEFENDANT'S OBJECTION TO THE PRE-SENTENCE REPORT

WARE, District Judge.

### INTRODUCTION

Defendant Rene Aragon pleaded guilty to violations of 18 U.S.C. § 2113(a), robbery of banks insured by the Federal Deposit Insurance Corporation. In the plea agreement, Defendant's base offense level under the Sentencing Guidelines was calculated to be twenty-two. However, the presentence report suggested an offense level of twenty-four, applying a two level enhancement pursuant to the United States Sentencing Commission, *Guidelines Manual*, § 2B3.1(b)(2)(F) (Nov. 1995), which allows such an enhancement whenever there has been an "express threat of death" during the commission of the robbery. Defendant filed an objection to this finding which is the subject of this order.

### FACTS AND ISSUE

The limited facts which are relevant to the issue under review are essentially undisputed. Defendant's *modus operandi* was to walk into a bank and present a note to the teller which would state in part, "I have a

gun and I'm not afraid to use it." There were no accompanying gestures or comments and the Defendant neither displayed nor did he carry a gun during the commission of the robberies. The narrow issue to be decided in this case is whether Defendant's actions constituted an "express threat of death" warranting a two level sentencing enhancement under USSG § 2B3.1(b)(2)(F).

## DISCUSSION

### 1. "Express Threat Of Death"

The Sentencing Guidelines state that "if an express threat of death was made, increase by 2 levels." The scope of this section is outlined in the commentary.

> An "express threat of death," as used in subsection (b)(2)(F) may be in the form of an oral or written statement, act, gesture, or combination thereof. For example, an oral or written demand using words such as "Give me the money or I will kill you", "Give me the money or I will pull the pin on the grenade I have in my pocket", "Give me the money or I will shoot you", "Give me the money or else (where the defendant draws his hand across his throat in a slashing motion)", or "Give me the money or you are dead" would constitute an express threat of death. The court should consider that the intent of the underlying provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, significantly greater fear than that necessary to constitute an element of the offense of robbery.

USSG § 2B3.1, comment. (n. 6) (hereinafter referred to as the "commentary").

In deciding whether an express threat of death has been made, it is not relevant that the defendant was unarmed. *U.S.A. v. Cadotte,* 57 F.3d 661, 662 (8th Cir.1995). Nor is it relevant that the victim felt unthreatened. *Id.* Rather, the guideline commentary calls for an objective test. "The determination is whether a reasonable person, given the conduct of the defendant and the context in which it occurred, would experience significantly greater fear than the level of intimi-

dation necessary to constitute an element of the offense of robbery." *U.S. v. France,* 57 F.3d 865, 866–67 (9th Cir.1995).

### 2. The Commentary To USSG § 2B3.1(b)(2)(F)

Much of the case law construing § 2B3.1(b)(2)(F) relies heavily upon the commentary. Defendant argues that this reliance is improper because the commentary expands the guideline too far. In support of this, Defendant cites *U.S. v. Alexander,* 88 F.3d 427 (6th Cir.1996), where a defendant effectuated several bank robberies by presenting demand notes. The most threatening note informed the teller that the defendant had both a bomb and a gun. In finding that this action did not amount to an express threat of death, the *Alexander* court rejected portions of the guideline commentary as being inconsistent with the plain meaning of the guideline itself.

> To satisfy the qualifier "express," a defendant's statement must distinctly and directly indicate that the defendant intends to kill or otherwise cause the death of the victim. Because four of the five examples in Application Note 6 [the commentary to USSG § 2B3.1(b)(2)(F) ] do not, they are not controlling. Similarly, reliance on the commentary's statement regarding the underlying intent of the guideline is unavailing if it leads to a determination that does not conform with the guideline itself.

*Id.* at 431.

The *Alexander* court made this finding by relying, in substantial part, upon a prior Eleventh Circuit case, *U.S. v. Tuck,* 964 F.2d 1079 (1992). In *Tuck,* the court analyzed the guideline elements as follows:

> We find that the guideline predicates the application of the enhancement on two factors. First, the threat must be express. Webster's Third New International Dictionary (1976) defines "express" as "Directly and distinctly stated or expressed rather than implied or left to inference: not dubious or ambiguous: definite, clear, explicit, unmistakable." Second, the threat must be of death, or activity that would cause

the victim to be in reasonable apprehension of his or her life.

*Id.* at 1080–81.

The court next compared its interpretation of the guideline to the commentary and, not surprisingly, found that the guideline's requirement that threats be "express" directly conflicted with the Commission's broad interpretation suggesting enhancement whenever the offender has engaged in conduct that would instill "significantly greater fear than that necessary to constitute an element of the offense of robbery." This perceived inconsistency led the *Tuck* court to reject most of the commentary. Defendant urges this Court to do the same.

The principal flaw in relying upon *Tuck* is obvious—it predates *Stinson v. U.S.*, 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993), which announced the controlling nature of guideline commentary and the narrow circumstances where it need not be followed. *Stinson* requires that courts follow the commentary unless it is "plainly erroneous or inconsistent" with the guideline. *Id.* at 46–48, 113 S.Ct. at 1920. The problem with *Tuck* is that the court proclaimed that the commentary was inconsistent with USSG § 2B3.1(b)(2)(F) by adopting Webster's conception of the term express. The court reasoned that the guideline term "express", as defined by the dictionary, limited application of the enhancement to only clearly stated threats. This contravenes *Stinson*, in that, within certain prescribed limits, the Supreme Court has declared commentary to be self-legitimating. In other words, the Sentencing Commission is permitted to define their own terms and it is improper to label that definition wrong simply because it is does not fit with a traditional meaning.

> Commentary, unlike a legislative rule, is not the product of delegated authority for rulemaking, which of course must yield to the clear meaning of a statute. [citation omitted] Rather, commentary explains the guidelines and provides concrete guidance *as to how even unambiguous guidelines are to be applied in practice.*

*Stinson v. U.S.*, 508 U.S. 36, 44, 113 S.Ct. 1913, 1918, 123 L.Ed.2d 598 (1993) (emphasis added).

With this mandate, it would be improper to ignore the Commission's definition of a properly defined term. Commentary cannot be disregarded strictly upon the basis that its construction of a term is inconsistent with a dictionary definition. This is not to say that commentary can never be inconsistent with a guideline. When read as a whole, the two may conflict. However, under *Stinson,* the Sentencing Commission clearly has the power to define specific terms in the commentary and it is those definitions that are controlling.

### 3. Defendant's Threat

Defendant's note, stating that he had a gun and was not afraid to use it, clearly falls within the sentencing enhancement. This Court finds that such a threat would instill in a reasonable person a significantly greater fear than that necessary to constitute an element of the offense of robbery. Although the use of force and violence, or intimidation, is a necessary component of robbery, this element can be satisfied merely by a threatening appearance. *See U.S. v. McCarty,* 36 F.3d 1349 (5th Cir.1994) (the intimidation element of robbery was satisfied based upon the fact that a reasonable person could feel a threat of bodily harm when faced with a large man wearing a wig and a fake beard presenting a note stating, "Be calm. This is a robbery."). When the Defendant clearly stated his reckless state of mind with respect to the use of a lethal weapon, he employed a level of intimidation significantly greater than that necessary to constitute robbery.

The application of the enhancement to this case is consistent with the most recent Ninth Circuit decision interpreting § 2B3.1(b)(2)(F), *U.S. v. France,* 57 F.3d 865 (9th Cir.1995). In *France* the defendant presented a demand note stating, "Give me all the 100s and 50s in your drawer. I have dynamite." In finding that this note satisfied the enhancement guideline, the court stated the following.

> It was not necessary, for purposes of applying section § 2B3.1(b)(2)(F), that France state that he intended to blow up the teller if his demands were not met.

The words France used would create in a reasonable person the same amount of fear as the grenade example in the commentary to section 2B3.1 ("Give me the money or I will pull the pin on the grenade I have in my pocket.").

Likewise, *Defendant's note in the im-*mediate case would instill the same amount fear as the commentary example, "Give me the money or I will shoot." To construe 2B3.1(b)(2)(F) as requiring some talismanic phrase elevating the threat to fit with a more common understanding of express would significantly undermine the purpose of the enhancement. When a perpetrator employs the threat of death to effectuate a bank robbery, either impliedly or explicitly, the two level enhancement should be applied.

## CONCLUSION

This Court finds that Defendant's note, which stated that he had a gun and was "not afraid to use it," amounted to an "express threat of death" as that phrase has been defined in the commentary. The threat to use a gun certainly instills in a reasonable person a "significantly greater fear than that necessary to constitute an element of the offense of robbery." Accordingly, the two level enhancement, recommended in the presentence report, is proper and is hereby applied.

IT IS SO ORDERED.